2007 VT 94

## State of Vermont v. Richard Decoteau

[940 A.2d 661]

No. 06-228

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 31, 2007

Motion to Clarify Granted October 10, 2007

*Eric M. López*, Windsor County Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General and *Josh O'Hara*, Legal Intern, Montpelier, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant appeals a violation of probation and subsequent probation revocation. On appeal, defendant argues that the district court: (1) erred in admitting a discharge summary and hearsay testimony at the probation revocation hearing; (2) abused its discretion in finding that the probation violation was willful; and (3) violated defendant's Fourteenth Amendment due-process right to confront adverse witnesses. We conclude that the trial court committed plain error in admitting the discharge summary and hearsay testimony; thus, we vacate and remand for a new hearing.

¶ 2. On July 5, 2005, defendant was arraigned for violation of an abuse prevention order. Subsequently, defendant was arraigned on additional charges, including disorderly conduct and violations of conditions of release. Defendant entered several plea agreements to resolve these charges. Most recently, defendant entered a global plea agreement in February 2006. Pursuant to this agreement, he pleaded guilty to a violation of probation and was released on probation with several conditions, including that he attend, participate in, and complete a residential treatment pro-

gram to the satisfaction of his probation officer. On March 7, 2006, defendant entered a residential treatment facility called Serenity House. Ten days later, Serenity House staff contacted defendant's probation officer to inform him that they were discharging defendant from treatment for inappropriate language and threatening behavior.

¶ 3. On March 20, 2006, defendant was arraigned on his probation-violation charge and held without bail. The court held a merits hearing on the probation-violation charge on May 17, 2006. At the hearing, the State questioned defendant's probation officer regarding defendant's dismissal from Serenity House. Defendant's probation officer recounted that his overall impression from conversations he had with Serenity House staff, in particular defendant's caseworker, was that defendant's attitude and behavior had been counterproductive to treatment. Defendant's probation officer stated that defendant's caseworker told him that staff reminded defendant on a daily basis to watch his attitude. Defendant's probation officer offered no dates or specifics concerning these conversations, but testified that the caseworker had spoken to defendant a couple of times, as had other staff members. Defendant did not object to the admission of this testimony.

¶ 4. The State also introduced, without objection, the discharge summary from Serenity House. The discharge summary explained that, while in treatment, defendant "displayed intimidating behavior and made several derogatory remarks to female clients." In addition, the attached incident report explained that defendant was discharged for "violating program rules, such as using inappropriate language and threatening behavior." The report also commented that defendant exhibited a "general failure to follow clear cut staff directives." The report contained no specifics about conversations that staff had with defendant, and the progress notes contained no entries of particular instances when defendant violated program rules.

¶ 5. Defendant testified at the hearing and recounted his version of events leading up to his discharge from Serenity House. Although he acknowledged three instances where his behavior may have been construed as inappropriate or threatening, he maintained that he had not threatened anyone and that Serenity House staff had warned him about his behavior on only one occasion prior to discharge. Defendant explained that he felt another resident had falsely accused him of threatening behavior

in order to have defendant removed from the program. The resident's roommate testified that he overheard the conversation between defendant and the resident in which defendant allegedly threatened the resident. Although the roommate could not remember exactly what was said, he testified that there were no threatening comments and that the exchange seemed civil.

¶ 6. At the close of the evidence, defendant objected to the admission of the discharge summary and his probation officer's testimony regarding what his caseworker had relayed about defendant's behavior at Serenity House. Defendant's counsel explained that she did not object sooner because she thought the caseworker would testify and thus be available for cross-examination. Without his live testimony, defendant argued that admission of the caseworker's statements through defendant's probation officer's testimony violated defendant's right to confront adverse witnesses.

¶ 7. In response, the court noted that defendant did not object at the time the evidence was introduced. Nonetheless, the court considered the objection and held that the disputed evidence was admissible. The court noted that hearsay can be admitted at a probation-revocation proceeding if it bears indicia of reliability. The court concluded that the discharge summary was reliable because it was the type of information a probation officer regularly relies on to make decisions. Further, the court reasoned that because the probation officer had direct communication with defendant's caseworker, who had the most knowledge about defendant's behavior, the content of these conversations was also reliable. Addressing the merits, the court found that defendant knew he was required to complete a treatment program and that he did not complete this program. Further, the court found that defendant engaged in a pattern of disrespectful behavior, which he failed to correct after staff repeatedly spoke with him. Thus, the court rejected defendant's argument that the violation was not willful and therefore did not amount to a violation of probation. Based on this violation, the court revoked probation and imposed the underlying sentence. This appeal followed.

¶ 8. In a probation revocation proceeding, the State has the burden of establishing that a probation violation occurred by a preponderance of the evidence. *State v. Klunder*, 2005 VT 130, ¶ 7, 179 Vt. 563, 892 A.2d 927 (mem.). The State may meet its

burden by establishing that the probationer violated an express condition. *Id.* If the State meets its burden, then the burden of persuasion shifts to the probationer to demonstrate that his violation was not willful but, instead, resulted from factors beyond his control. *State v. Austin*, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996). Whether a violation occurred is a mixed question of law and fact. *Id.* The trial court must first determine what actions the probationer took and then make a legal conclusion regarding whether those acts violate probation conditions. *Id.* We will not disturb the court's findings if they are fairly and reasonably supported by credible evidence, and we will uphold the court's legal conclusions if reasonably supported by the findings. *Id.*

¶ 9. On appeal, defendant first claims that the court erroneously admitted the discharge summary and defendant's probation officer's statements regarding what Serenity House staff members told him about defendant. Defendant argues that the statements are unreliable hearsay and should be excluded. Defendant contends that, without the hearsay evidence, the evidence does not support the court's finding that defendant's failure to complete the program was willful. The State counters that defendant did not preserve his objection and that, in any event, the statements are reliable.

■ ¶ 10. Defendant failed to make a timely objection to the admission of hearsay statements in his probation officer's testimony and the discharge summary at the time they were admitted. See *State v. Kinney*, 171 Vt. 239, 253, 762 A.2d 833, 844 (2000) (requiring party to make a timely motion to exclude evidence). Although defendant claims his failure to make a timely objection was predicated on the assumption that defendant's caseworker would testify, such a misunderstanding does not rectify defendant's failure to object. Defendant's argument that he preserved the objection by challenging the admission at the close of the evidence also fails. The party opposing introduction of evidence must object at the time the evidence is offered to preserve this issue for appeal. *Id.* (concluding that objection not preserved when made the day after the testimony was introduced).

■ ■ ¶ 11. Having concluded that defendant failed to preserve his argument for appeal, we consider whether plain error applies in this situation. Generally, in civil proceedings, issues not raised below are waived. *Pope v. Town of Windsor*, 140 Vt. 283, 286, 438

A.2d 388, 390 (1981). We conclude, however, that a plain-error analysis is appropriate in this case. Even though probation-revocation proceedings are not "essentially 'criminal' in nature," *State v. Brunet*, 174 Vt. 135, 141, 806 A.2d 1007, 1011 (2002), neither are the proceedings wholly civil. *State v. Leggett*, 167 Vt. 438, 446, 709 A.2d 491, 496 (1997) ("A probation-revocation proceeding is a hybrid criminal/civil proceeding."). Furthermore, we have applied plain error in civil proceedings when "important interests and basic constitutional rights" were implicated. *Varnum v. Varnum*, 155 Vt. 376, 383, 586 A.2d 1107, 1110 (1990) (addressing mother's free exercise of religion claim, even though it was raised for the first time on appeal because "fundamental rights and interests [were] at stake"). Because defendant's claim involves his right to confront adverse witnesses and implicates the validity of the entire proceeding, we examine whether the court committed an error that "strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." *State v. Ayers*, 148 Vt. 421, 426, 535 A.2d 330, 333 (1987); see V.R.Cr.P. 52(b) (explaining that in exceptional cases where errors "affect[ ] substantial rights," error can lead to reversal absent a timely objection).

■ ■ ¶ 12. Thus, we consider whether the court committed plain error in admitting the discharge summary and defendant's probation officer's testimony, both of which contained hearsay about why defendant was discharged from the program at Serenity House. Hearsay is not categorically inadmissible in a probation-revocation proceeding because the rules of evidence do not apply. V.R.E. 1101(b)(3). A probationer is entitled to due process under the Fourteenth Amendment and, as such, is afforded the right to confront adverse witnesses. See *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that a parolee is entitled to due process, including the right to confront and cross-examine adverse witnesses); see also *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 786 (1973) (extending due-process protections to probationers facing revocation). Therefore, "a trial court must make an explicit finding, and must state its reasons on the record, whether there is good cause for dispensing with the probationer's confrontation right and admitting hearsay into evidence." *Austin*, 165 Vt. at 396, 685 A.2d at 1081. Although we have not explicitly outlined the

elements of good cause, we made clear in *Austin* that the reliability of the evidence is a key factor.[1] *Id.*

¶ 13. Defendant argues that the discharge-summary report and the probation officer's hearsay statements do not bear sufficient indicia of reliability to be admissible. In this case, the trial court reasoned that the probation officer's testimony was reliable because he spoke directly with Serenity House staff, and that the discharge summary was reliable because it is the type of evidence probation officers routinely rely upon. We disagree that these facts alone make the hearsay reliable and conclude that the hearsay evidence admitted in this case does not contain any of the typical guarantees of reliability.

■ ¶ 14. We have not adopted a formal test to assess reliability, but some important considerations emerge from our review of past cases. The first is the presence of corroborative evidence. See *Watker v. Vt. Parole Bd.*, 157 Vt. 72, 74, 596 A.2d 1277, 1279 (1991) (finding hearsay sufficiently reliable where defendant's own testimony corroborated hearsay statements); *State v. Finch*, 153 Vt. 216, 218, 569 A.2d 494, 495 (1989) (concluding that hearsay testimony was reliable because the statements of the two hearsay declarants were mutually supportive). Another factor is "whether the proffered hearsay is an objective fact reported by the declarant or instead contains conclusions which ought to be tested by cross-examination." *Bailey v. State*, 612 A.2d 288, 294 (Md. 1992); see *Austin*, 165 Vt. at 397, 685 A.2d at 1081-82 (concluding that a police report does not bear indicia of reliability because unlike a urinalysis it is more personal and subject to inferences and conclusions). Finally, hearsay evidence is more reliable if it contains a greater level of specific detail. See *Watker*, 157 Vt. at 77, 596 A.2d at 1280 (hearsay reliable where specific observations of various police officers included same details such as the weather and where the victim was found); see also *State v. James*, 2002 ME 86, ¶ 15, 797 A.2d 732 (including specificity as a factor in determining reliability of evidence).

■ ¶ 15. In light of these factors, we conclude that the evidence admitted by the trial court does not meet any of the traditional

---

[1] Other courts consider additional factors, such as the availability of the declarant and "whether the evidence is offered to prove the principal contested issue in the violation or a matter peripheral thereto." *Bailey v. State*, 612 A.2d 288, 293 (Md. 1992).

guarantees of trustworthiness. First, there was no evidence to corroborate the hearsay allegations regarding defendant's misbehavior at Serenity House. Cf. *Leggett*, 167 Vt. at 440-41, 709 A.2d at 492-93 (affirming where ample direct evidence supported hearsay allegations). Defendant's probation officer testified about what he heard from defendant's caseworker and the summary contained in notes by staff members, but no nonhearsay testimony supported these accounts of defendant's behavior at Serenity House or the measures staff took to address defendant's behavior. See *United States v. Taveras*, 380 F.3d 532, 537-38 (1st Cir. 2004) (concluding that hearsay testimony was unreliable where there was no corroborating evidence of the declarant's statement).

¶ 16. We disagree with the dissent's contention that defendant's own statements corroborated, and were cumulative of, the hearsay evidence. Defendant testified that he did not complete the program, but explained that he followed staff instructions and did not threaten anyone at Serenity House. In addition, although defendant admitted that he made inappropriate comments, he testified that Serenity House staff spoke to him about his behavior on only one occasion prior to his discharge. Rather than corroborating the hearsay statements, this testimony directly conflicted with the allegations that staff routinely spoke to defendant about his behavior, that he failed to follow staff instructions and that he engaged in threatening behavior.

¶ 17. Second, the type of evidence introduced here contains judgments and conclusions, not objective facts. As the Maryland Court of Appeals in *Bailey* explained, "whether proffered hearsay evidence is a straightforward, objective fact observed by the declarant, or whether it contains inferences or conclusions drawn by the declarant, will weigh in the court's determination of its reliability." 612 A.2d at 294. The hearsay admitted in this case did not recite objective facts about defendant's stay at Serenity House, but consisted primarily of conclusions and inferences concerning his behavior. Cf. *id.* at 295 (admitting hearsay letter from a treatment center where admitted for the sole purpose of demonstrating that probationer failed to complete the program and explaining the result might be different "if the State were alleging that [the probationer] violated his probation based on characterizations of [the probationer's] behavior"). For example, defendant's probation officer testified that his impression after speaking with defendant's caseworker was that

defendant's attitude was counterproductive to treatment. The discharge summary reported that defendant violated program rules and displayed threatening behavior, but provided no specifics of either. The only objective fact in the report was that defendant had been discharged. This is the type of evidence we addressed in *Austin*, a case in which we distinguished a urinalysis report that relies on scientific data from a police officer's arrest report, concluding that the latter did not bear the same indicia of reliability because it was subject to personal opinion. 165 Vt. at 397, 685 A.2d at 1081-82 (citing *United States v. Bell*, 785 F.2d 640, 644 (8th Cir. 1986) ("While police reports may be demonstrably reliable evidence of the fact that an arrest was made, . . . they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true.")). Like the relationship between police officers and those they arrest, there is a personal and sometimes adversarial relationship between treatment providers and their patients; consequently, a treatment report, like a police report, is subjective and less inherently reliable than a laboratory report.[2] See *Bell*, 785 F.2d at 643-44 (explaining that police reports are inherently more subjective than lab reports because of the personal and adversarial relationship between officers and those they arrest).

¶ 18. Finally, the hearsay allegations were not factually detailed, but rather stated as general statements and conclusions. Cf. *Egerstaffer v. Israel*, 726 F.2d 1231, 1235 (7th Cir. 1984) (finding statement reliable in part because it was reasonably detailed). Defendant's probation officer could not identify any particular conversations that staff had with defendant, nor did the discharge summary contain specific information about defendant's conduct. Rather, the information that defendant's probation officer relayed in his testimony and that was contained in the discharge summary amounted to general allegations that defendant had displayed threatening behavior and violated rules. In contrast, defendant offered detailed accounts of his behavior at Serenity House, including behavior or instances he thought staff may have

---

[2] The dissent contends that the potential bias or motive to fabricate present in a police affidavit following arrest is not present here because a counselor or probation officer does not have the same personal and adversarial relationship with a probationer as a police officer and an arrested person. Whether a counselor's relationship with a probationer is adversarial, the relationship is definitely personal and any reports are inherently subject to bias and interpretation.

construed as threatening. He also recounted the conversation he had with his caseworker prior to his discharge. He was unable, however, to effectively rebut the hearsay allegations because he could not question witnesses to determine which behavior they deemed threatening or to ascertain when he had violated rules. See *Mason v. State*, 631 P.2d 1051, 1055 (Wyo. 1981) (noting that it is impossible for the defendant to test the accuracy of statements made by state's witnesses if they are not available to testify and finding plain error where defendant was unable to demonstrate alternative theory). Thus, in considering these factors, we conclude that none demonstrate that the evidence was reliable.

¶ 19. Having concluded that the hearsay evidence was not reliable, we further hold that the admission of hearsay was not harmless and was plain error.[3] The hearsay evidence was critical to the main issue at trial — whether defendant's discharge from Serenity House was willful. Defendant's entire theory at trial was that although he was discharged from Serenity House the discharge was due to circumstances beyond his control and was not a result of his willful conduct. Thus, the information regarding defendant's behavior at Serenity House, the measures staff took to address his behavior and the ultimate reason for his discharge were the primary disputes at trial. The State demonstrated defendant's behavior and the reasons for his violation solely through improperly admitted hearsay evidence. See *United States v. Comito*, 177 F.3d 1166, 1171 (9th Cir. 1999) (explaining that the more significant particular evidence is to a finding, the more important it is to demonstrate that the proffered evidence is reliable); *Mason*, 631 P.2d at 1057 (finding plain error in admission of hearsay testimony and concluding that defendant's interest in questioning the actual source of the information is far stronger when the evidence is introduced to establish a substantive violation, not merely defendant's general character).

¶ 20. Moreover, the court relied on the hearsay evidence in its findings and in its decision to revoke probation. Specifically rejecting defendant's defense that his violation was not willful, the

---

[3] Because we conclude that the hearsay testimony did not bear sufficient indicia of reliability to establish good cause, we do not reach defendant's additional arguments that the district court: (1) abused its discretion in finding that defendant's violation was willful, and (2) violated defendant's Fourteenth Amendment due-process right to confront adverse witnesses.

court found that defendant "feels that other people are responsible for his conduct when, after ten days of conversations by staff his conduct remained unchanged, [and] he was discharged from that program." The court also found that defendant engaged in a pattern of inappropriate behavior. The only basis in the record for the court's finding that defendant had engaged in a pattern of behavior that Serenity House staff tried to speak to him about on several occasions is the hearsay testimony related by defendant's probation officer.[4] Defendant's testimony that staff spoke to him about his behavior only on one occasion directly contradicted these findings. Although the district court found that defendant was not credible as a witness, there was no source independent of the hearsay evidence from which the court could find defendant had engaged in a pattern of inappropriate activity and that staff had continually confronted him about this behavior — findings that were integral to the court's decision to find a violation and revoke defendant's probation. Compare *Leggett*, 167 Vt. at 444, 709 A.2d at 495 (affirming probation revocation where sufficient evidence supported finding without reliance on objectionable hearsay testimony), with *Austin*, 165 Vt. at 398, 685 A.2d at 1082 (holding that probation-violation finding was not supported by credible, non-hearsay evidence).

*Vacated and remanded for a new hearing.*

¶ 21. **Reiber, C.J.,** dissenting. I agree that because defendant never objected at trial to admission of the hearsay evidence he can prevail only if we conclude that this is an extraordinary case involving manifest injustice. Unlike the majority, however, I conclude that plain error is conspicuously absent in this case. Indeed, a review of the record, particularly defendant's own testimony, demonstrates unequivocally that defendant violated an express probation condition, and further that he failed to meet his burden

---

[4] The dissent concludes that if there was error, it was harmless because defendant's own testimony supported the court's finding of a probation violation. Although defendant admitted that he was removed from the program, the court's conclusion that defendant's violation was willful relied on more than the simple fact that defendant did not complete the program. The court's findings supporting its conclusion that his violation was willful – that staff spoke regularly to defendant and that defendant continually engaged in a pattern of inappropriate behavior – were based solely on the inadmissible hearsay evidence. Thus, the admission of the hearsay testimony was not harmless because it supported the court's findings on the disputed issue in the case.

of showing that the violation was beyond his control and therefore not willful. At the probation revocation hearing, defendant conceded his awareness of the express condition requiring him to successfully complete the substance-abuse treatment program. He also acknowledged engaging in confrontational behavior that resulted in the treatment center terminating him from the program. As permitted in probation proceedings, the district court allowed hearsay evidence concerning the alleged violation. For the most part, that evidence merely confirmed the undisputed fact that defendant had been terminated from the program and indicated general grounds for the termination. In light of defendant's admissions during his testimony, the cumulative nature of the admitted hearsay evidence, and defendant's failure to meet his burden of demonstrating that his conduct was beyond his control, there is no plain error, if any error at all. Accordingly, I respectfully dissent.

¶ 22. At the probation revocation hearing, defendant acknowledged in his direct testimony that he had been to court on alleged violations of probation four times in the past year, and that he was aware he would be in violation of his probation if he did not complete the substance-abuse treatment program. He also testified that he understood he had been terminated from the program for engaging in threatening behavior, and further that he knew exactly what incidents had led to the termination decision. Defendant then gave a detailed account of those incidents from his perspective.

¶ 23. Regarding the first incident, defendant acknowledged making a derogatory remark to a homosexual resident participating in the program — a person whom he further acknowledged had expressed great anxiety over being picked on at the facility. He also admitted that (1) following the incident, the resident informed a counselor that he felt threatened by defendant; (2) the counselor confronted defendant about the incident; and (3) defendant agreed to stay away from the resident in the future. The second incident concerned defendant making inappropriate comments to a female resident during a group discussion. Defendant admitted that several people in the group were upset by his comments, and that the woman to whom he directed the comments was "crazed" over his remarks.

¶ 24. Regarding the third incident that ultimately led to his discharge from the treatment program, defendant acknowledged

confronting the same resident he was warned to stay away from to tell him of his displeasure about perceived insults and threats he had received from the resident and his "boyfriend." Defendant conceded that he initiated the confrontation and informed the resident that he was "pissed . . . off" about the perceived insults and threats. He also acknowledged that immediately following the confrontation the resident went to the counselor, who shortly thereafter told defendant that his stay at the facility was "tenuous." Moreover, by his own admission at the revocation hearing, defendant confided to the resident's roommate shortly after the third incident that he was concerned about the resident reporting the confrontation to the counselor. He further testified that he himself approached the counselor shortly after the incident to present his side of the story. That same day, defendant was terminated from the program.

¶ 25. To be sure, defendant's testimony was interspersed with a litany of excuses for each of the incidents — he meant the derogatory remark only as a joke, he did not mean to insult the woman in the group meeting, he never threatened anybody, etcetera. He also relied upon the testimony of the roommate of the resident he was accused of threatening — the same person he confided in following the incident. Apparently, the counselor did not believe him, however, and, as the majority acknowledges, neither did the district court. Indeed, in finding a probation violation, the court concluded that defendant engaged in the alleged confrontational behavior of his own volition despite being warned about it and told to stay away from the resident whom he later confronted. Noting that defendant was "agitated" and "angry" even when testifying about the conversation he had had with the resident, the court concluded that defendant was unwilling to acknowledge the threatening nature of his behavior at the facility.

¶ 26. Notwithstanding the district court's findings regarding defendant's testimony, the majority concludes that the court committed plain error by allowing the State to present evidence that merely stated what was obvious from defendant's testimony — that defendant was terminated from the facility for engaging in inappropriate and threatening behavior. Apparently, the majority would have the district court hold a trial within a trial to determine the precise nature of the confrontational conversations between defendant and other residents — conversations to which even the counselor was not privy. I cannot agree. Defendant

acknowledged that he was terminated from the program after (1) he angrily confronted a resident he was asked to stay away from, and (2) the counselor considered conflicting accounts of what happened. That is sufficient evidence, in and of itself, to support the district court's finding that he violated a probation condition requiring him to successfully complete the program.

¶ 27. Following defendant's testimony, the court admitted, without objection, a discharge report and testimony from defendant's probation officer stating what the counselor had told the officer concerning the grounds for defendant's discharge. The brief discharge report indicated that defendant had been terminated from the program for violating program rules by using inappropriate language and engaging in threatening behavior. Defendant's probation officer briefly testified that defendant's counselor told him of defendant's counterproductive attitude and behavior, particularly with respect to one male and one female resident. He also testified that defendant had been warned on several occasions about his behavior but did not listen. Although the report and the probation officer's testimony did not offer much detail as to exactly what behavior led to defendant's discharge from the program, defendant's own detailed testimony concerning the incidents revealed the basis for the discharge and rendered the hearsay evidence essentially cumulative in nature.

¶ 28. As the majority acknowledges, although a probationer has due process rights at a probation revocation hearing, the scope of those rights is not as extensive as those in a criminal proceeding. For example, the "right to confront adverse witnesses does not require the exclusion of all hearsay evidence" in probation proceedings. Reporter's Notes, V.R.Cr.P. 32.1; see *State v. Austin*, 165 Vt. 389, 395, 685 A.2d 1076, 1080 (1996) (holding that the trial court may dispense with a probationer's confrontation right and admit hearsay evidence upon a showing of good cause, which turns on the reliability of the proffered evidence); see also *State v. James*, 2002 ME 86, ¶¶ 10-11, 797 A.2d 732 (deciding to follow United States Supreme Court decisions allowing reliable hearsay evidence in probation hearings).

¶ 29. The majority also recognizes that a probationer objecting to the admission of hearsay evidence on confrontation grounds "must apprise the trier of fact of the possible violation, express a desire to question the witness, ask the State to produce the witness or show 'good cause' why the witness is not present, ask

for a continuance, raise the confrontation issue, or object to the absence of the witness." *Austin*, 165 Vt. at 392, 685 A.2d at 1078-79. We require a specific objection on confrontation grounds "because it triggers the consideration of a secondary issue, namely, whether circumstances making production of the witness difficult or impractical outweigh the parolee's need to confront and cross-examine the witness." *Watker v. Vt. Parole Bd.*, 157 Vt. 72, 78, 596 A.2d 1277, 1281 (1991). Hence, "when ruling on the admissibility of hearsay evidence *to which a probationer has objected on confrontation grounds,* [a trial court] must make an explicit finding of good cause for dispensing with the probationer's confrontation right and admitting the evidence against him." *Austin*, 165 Vt. at 395, 685 A.2d at 1080 (emphasis added).

¶ 30. In this case, however, defendant did not make a timely objection to admission of the hearsay evidence, and thus the district court had no opportunity to weigh the bases for such an objection against any proffered reasons for not calling potential witnesses against defendant. Indeed, it is conceivable that the testimony of the counselor would have been more damaging than helpful to defendant. At best from defendant's perspective, the counselor's testimony would likely have elicited only further hearsay on what the resident and defendant had told him about their confrontation. In my view, the district court was not compelled to require testimony from the principle actors involved in the confrontations to try and determine who said what to whom. Defendant had already testified that he had engaged in confrontational behavior that led to his dismissal from the program. Thus, defendant's own testimony corroborated the essential truth of the hearsay evidence.

¶ 31. One could argue that there was no error at all, let alone plain error, in admission of the unchallenged hearsay evidence. As the majority points out, the most important factor in determining good cause for allowing hearsay evidence in probation proceedings "is the reliability of the evidence offered by the State." *Austin*, 165 Vt. at 396, 685 A.2d at 1081; see *Bailey v. State*, 612 A.2d 288, 293 (Md. 1992) ("In determining whether there is good cause to admit hearsay in a probation revocation hearing, it is obvious that the most important factor is the reliability of the proffered hearsay evidence."). The reliability of evidence "is essentially a fact specific issue" within the trial court's discretion, and therefore subject to reversal by this Court only upon a showing of an abuse

of discretion. *Bailey*, 612 A.2d at 293. Further, as the majority acknowledges, the key factors in determining the reliability of hearsay evidence at a probation revocation hearing are (1) whether the hearsay evidence is corroborated in whole or in part by other evidence at the hearing, including the testimony of the probationer; (2) whether the hearsay is sufficiently detailed; (3) whether the source of the hearsay presents the possibility of bias or a motive to fabricate; and (4) whether the hearsay is being offered to prove a central issue in the case. See *James*, 2002 ME 86, ¶ 15; *Bailey*, 612 A.2d at 293.

¶ 32. In my view, these factors point towards admitting the hearsay evidence in this case because of its reliability. As described above, the hearsay evidence — a discharge summary report and the probation officer's testimony concerning the reasons the counselor gave him for terminating defendant from the program — was essentially cumulative with respect to defendant's own testimony, which acknowledged he was terminated for engaging in confrontational and threatening behavior. Cf. *State v. Leggett*, 167 Vt. 438, 443 n.6, 709 A.2d 491, 494 n.6 (1997) (noting that a probationer's own implausible and inherently contradictory explanation of events can corroborate the State's case); *Watker*, 157 Vt. at 77, 596 A.2d at 1280 (concluding that probationer's acknowledgment of the victim being beaten "actually bolstered the hearsay evidence against him," notwithstanding his self-serving assertion that he was not responsible for the beating). Moreover, although the hearsay evidence was not detailed, it was corroborated by defendant's own detailed testimony.

¶ 33. Nor do I believe that the source of the hearsay evidence introduced here makes it inherently unreliable. Although the majority is correct that the hearsay evidence in this case includes subjective judgments and conclusions, I disagree that the discharge summary and the probation officer's testimony regarding the counselor's reason for the discharge are the equivalent of a police affidavit following an arrest. The potential bias that might be present in a police report because of the personal and adversarial relationship between a police officer and an arrested person, see *Austin*, 165 Vt. at 397, 685 A.2d at 1081-82, is not present with respect to the relationship between a counselor or probation officer and a probationer participating in a rehabilitative program. See *Bailey*, 612 A.2d at 295 (noting that a letter from a facility explaining why the defendant was discharged from its

program was inherently reliable because of a lack of motive to fabricate the basis for the discharge). In any event, the salient effect of the hearsay evidence in this case was to confirm that defendant had been terminated from the program for engaging in threatening behavior, which resulted in a violation of an express condition of his probation. This basic fact, although the central issue in the case, was undisputed and admitted by defendant.

¶ 34. Once the State demonstrated by a preponderance of the evidence, either through defendant's testimony or otherwise, that defendant had violated a probation condition, the burden was on defendant to prove " 'that his failure to comply was not willful but rather resulted from factors beyond his control and through no fault of his own.' " *Austin*, 165 Vt. at 398, 685 A.2d at 1082 (quoting *Bailey*, 612 A.2d at 291) (internal citation omitted). Here, as in *Bailey*, defendant utterly failed to meet his burden of showing a nonwillful violation — indeed, his own testimony confirmed a willful violation. In *Bailey*, the defendant claimed that the court violated his confrontation rights at a probation revocation hearing by admitting a letter from a facility stating, among other things, the reasons for the defendant's discharge from its program. In determining that there was good cause to admit the letter, the court concluded not only that the letter was inherently reliable and corroborated by the defendant's own testimony, but also that the letter was admitted in support of the undisputed fact that the defendant had not successfully completed the program. *Bailey*, 612 A.2d at 295. In response to the defendant's argument that the letter was offered to prove the additional proposition that the violation was not willful, the court reiterated that it was the defendant's burden, not the State's, to prove that the violation occurred through no fault of his own and therefore was not willful. *Id.*

¶ 35. The same is true here. The State plainly met its initial burden — through defendant's own testimony — in showing that defendant had not successfully completed the program and thus had violated an express probation condition. The discharge summary report and the probation officer's testimony merely confirmed this fact, the details of which were brought to light through defendant's testimony. Thus, the hearsay evidence was admissible on that point. To the extent that the hearsay evidence could have been considered in determining the willfulness of the violation, it was defendant's burden, not the State's, to satisfy that

burden — and defendant plainly failed to meet that burden. Indeed, on cross-examination, defendant backtracked from his statement that he had been warned about his behavior on only one occasion, admitting that his counselor had talked to him on a regular basis. As the district court found, defendant's own testimony demonstrated that defendant purposely confronted a resident even after being told to stay away from him.

¶ 36. But even assuming that the district court erred in admitting the hearsay evidence, defendant did not object (unlike the defendant in *Bailey*), and there is no plain error. There is no precise standard for judging whether plain error exists — "we must examine the record in each case, and determine whether the error is so prejudicial that 'it undermines confidence in the outcome of the trial.'" *State v. Johnson*, 158 Vt. 508, 513, 615 A.2d 132, 134 (1992) (quoting *United States v. Sblendorio*, 830 F.2d 1382, 1388 (7th Cir. 1987)). Because of defendant's failure to object to the hearsay evidence, the district court did not have the opportunity to consider or make findings on the question we review for plain error on appeal — whether other evidence, including defendant's testimony, corroborated the hearsay testimony and thus supported a finding of a probation violation. In these circumstances, it becomes this Court's duty to "examine the record" and determine whether plain error exists. *Johnson*, 158 Vt. at 513, 615 A.2d at 134; see *United States v. Young*, 470 U.S. 1, 16 (1985) (reviewing court must evaluate claim of plain error against entire record of case).

¶ 37. As we have stated on numerous occasions, "[p]lain error exists only in exceptional circumstances where a failure to recognize error would result in a miscarriage of justice, or where there is glaring error so grave and serious that it strikes at the very heart of the defendant's constitutional rights." *State v. Pelican*, 160 Vt. 536, 538, 632 A.2d 24, 26 (1993) (quotation omitted). In this case, we should be even more reluctant to find plain error. As noted, probation proceedings are considered civil in nature and do not involve the full panoply of rights to which defendants are entitled in criminal trials. See *State v. Kasper*, 152 Vt. 435, 439, 566 A.2d 982, 985 (1989) (noting that "the scope of a probationer's due process rights at [a probation revocation] hearing does not parallel the constitutional rights afforded a defendant during a criminal trial."); *State v. Schroeder*, 149 Vt. 163, 163, 540 A.2d 647, 647 (1987) (per curiam) (holding that a parole or probation

proceeding "is not the same as a criminal prosecution and that such a hearing is flexible enough to allow in evidence that would not be admissible in an adversary criminal proceeding"). Therefore, plain error should be found only when there is serious and flagrant error calling into question the very integrity of the trial. See 21 C. Wright & K. Graham, Federal Practice and Procedure § 5043, at 980 (2d ed. 2005) (plain error is rarely found in civil cases because the "parties have fewer constitutional rights to introduce or exclude evidence").

¶ 38. In any event, regardless of which standard of plain error we apply, a careful review of the record reveals that there was no glaring error or manifest injustice at defendant's hearing. Nor does allowing the discharge report or probation officer's hearsay testimony undermine one's confidence in the outcome of the hearing. Accordingly, I would hold that admission of the hearsay evidence in this case was not plain error, if any error at all.