# ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-201

JULY TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Chittenden Unit, |
| | } | Criminal Division |
| Scott Provost | } | |
| | } | DOCKET NO. 330-1-12 Cncr |

In the above-entitled cause, the Clerk will enter:

An amended opinion has been issued in this case in response to appellant's motion for reargument. The opinion issued August 1, 2014, State v. Provost, 2014 VT 86, is withdrawn and replaced by an amended opinion, State v. Provost, 2014 VT 86A. In all other respects, the motion for reargument is denied.

BY THE COURT:

Paul L. Reiber, Chief Justice

John A. Dooley, Associate Justice

Marilyn S. Skoglund, Associate Justice

Beth Robinson, Associate Justice

NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2014 VT 86A

No. 2013-201

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Scott Provost | May Term, 2014 |

Brian J. Grearson, J.

Thomas J. Donovan, Jr., Chittenden County State's Attorney, and Andrew R. Strauss,
 Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, Joshua S. O'Hara and Rebecca Turner,
 Appellate Defenders, Montpelier, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.[1]


¶ 1.    **SKOGLUND, J.**   Defendant appeals from the trial court's determination that he violated the terms of his probation by failing to complete a domestic-violence program in a timely manner and by engaging in threatening behavior during an intake meeting for the program.  Defendant challenges both of these conclusions on appeal.  We affirm.

¶ 2.    On June 20, 2012, defendant pled guilty to one count of second-degree aggravated domestic assault, one count of resisting arrest, and one count of violating his conditions of release.  Defendant received an agreed sentence of nine months to three years, all suspended, and

_____

[1] Justice Crawford did not participate in this amended decision.

he was placed on probation. Defendant's probation conditions required him, among other things, to complete the Domestic Violence (DV) Solutions program and to refrain from violent or threatening behavior. The term of probation was fixed at one year and expired by its original terms on June 20, 2013. The instant violation-of-probation (VOP) complaint was filed in February 2013.

¶ 3. The following evidence was presented at the April 2013 merits hearing. Spectrum Youth and Family Services runs the DV Solutions program. Defendant cancelled two scheduled intake meetings for the program in January 2013, asserting that he lacked the $20 fee. Defendant's probation officer scheduled a third intake meeting and told defendant that if he did not go through with the scheduled meeting, he would be cited for violating probation.

¶ 4. The intake meeting occurred on February 13, 2013, eight months into defendant's year-long probation. The meeting went badly. The counselor testified that defendant was angry and belligerent from the outset, with defendant uttering a hostile response when she simply called his name for his appointment. When the counselor asked about defendant's convictions, he accused her of going through his records. He questioned why he had to pay for the meeting. He denied committing the offenses for which he was convicted. Given his denial, the counselor informed defendant that she would need to stop the intake. She stood up, as did defendant. Defendant then "puffed out" his chest and stood between the counselor and the door. The counselor called out to a probation officer for assistance. Defendant remained standing in the doorway. When the probation officer arrived to escort defendant, defendant began yelling at him.

¶ 5. The counselor testified that she felt threatened by defendant's behavior. She stated that in eight years of conducting intakes, she had never before felt so threatened that she had to call a probation officer for help. Defendant denied threatening the counselor but admitted in court that his behavior was "not very civil" and that he "wasn't very nice that day."

3

¶ 6.     At the conclusion of the hearing, the trial court found that defendant violated both probation conditions at issue.  As it explained, defendant had been found guilty of second-degree aggravated domestic assault and he had gone more than six months without addressing the DV Solutions condition of his probation.  The court rejected defendant's assertion that he had been unable to pay the $20 program fee.  As to the third intake meeting, the court found that defendant's actions alone—both denying that he committed the underlying offense and his threatening behavior—prevented him from completing the intake that day.

¶ 7.     The court emphasized that defendant's behavior that day had to be taken in context.  It found that defendant knew why he was at Spectrum, and indeed, by his own admission, he had been to Spectrum before for that very same purpose.  The court found that defendant had the same attitude from the time he entered the building until he left.  He was angry and belligerent, and he carried himself in a threatening manner to the point where the counselor, for the first time in eight years, had to summon another officer.  Even after the counselor called for assistance, defendant did not leave the room.  He remained standing in the room in an assertive posture and tried to intimidate the counselor by standing between her and the only exit. The court concluded that the combination of defendant's words and demeanor—his tone of voice, the way he carried himself, the way he expressed himself, his denial of why he was there, and arguing over the charge that he was there for—rose to the level of threatening behavior.

¶ 8.     At the sentencing hearing, defendant's probation officer advocated that probation be revoked and that the court impose the underlying sentence with a recommendation that defendant complete the Discovery Program for violent offenders while in prison.  Through counsel, defendant sought to remain on probation and requested additional time to complete the DV Solutions program.  His attorney stated:

> So we would be asking for the court to impose—to reimpose the
> original conditions of probation with an extension of the term to
> allow for him to complete DV Solutions.  Clearly if he's not able

to do it, he would be back here on a violation of probation, and I think at that point the department's request for revocation would be on more solid footing than it is at this point.

Defendant said the same thing:

I would just ask the court to grant me my request to continue [on probation] and to prove to the court and to Probation and Parole that I am willing to follow through and accomplish these recommendations and these court orders of these classes and willing to participate, not just show up.

¶ 9.    The trial court accepted defendant's position.  It extended the term of probation by another year to June 2014.  With respect to the violation based on threatening behavior, the court ordered defendant to write a letter of apology to the intake counselor at Spectrum. Defendant appealed from the court's order.

¶ 10.    In August 2013, while his appeal was pending, defendant's probation officer filed a second VOP complaint based on defendant's consumption of alcohol as well as his dismissal from the DV Solutions program for failure to attend three program meetings in May 2013 and one in July 2013.  The probation officer filed a third VOP complaint in September 2013 alleging that defendant again violated the no-alcohol condition and engaged in violent or threatening behavior on three separate occasions.

¶ 11.    Pursuant to a plea agreement, defendant admitted to the August alcohol violation.[2] The court subsequently revoked defendant's probation and imposed the underlying sentence. Defendant did not appeal from this order.

¶ 12.    We apply well-established principles to this dispute.  The State must demonstrate by a preponderance of the evidence that a defendant violated a condition of probation.

---

[2]  As the State notes, the violation of the DV Solutions condition was not specifically addressed during this hearing, and it is unclear from the record why this omission occurred. With respect to the allegations concerning violent or threatening behavior, defendant did not admit to these violations because he had pending criminal charges for this behavior.  Court records indicate that in late 2014, defendant pled guilty to simple assault on a police officer, and he was sentenced to serve 119-to-120 days in jail, beginning on October 29, 2014, to be served concurrently with his existing sentence.

28 V.S.A. § 302(a)(4). If a violation is established, the court may continue probation, alter the conditions of probation, or revoke probation and impose the underlying sentence. Id. § 304. Whether a violation occurred is a mixed question of law and fact requiring the trial court to determine what actions the defendant took and whether those actions violated the probation conditions. State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996). "We will not disturb the court's findings if they are fairly and reasonably supported by credible evidence, and we will uphold the court's legal conclusions if reasonably supported by the findings." State v. Decoteau, 2007 VT 94, ¶ 8, 182 Vt. 433, 940 A.2d 661.

¶ 13. Defendant first argues that the court erred by finding that he was required to complete the DV Solutions program by February 2013, eight months into his probation. He maintains that he had until the end of his probationary term to comply with this requirement, and that the State failed to show that he could not have completed the program by this time. Defendant acknowledges that he did not raise these arguments below. He contends, however, that the trial court committed plain error because the errors were "obvious" and the court's decision violated his due process rights.

¶ 14. We have recognized that plain-error review of unpreserved issues in the probation-revocation context is sometimes appropriate, depending on the nature of the claims. See Decoteau, 2007 VT 94, ¶ 11 (recognizing that plain error may be found in civil proceedings when "important interests and basic constitutional rights" are implicated, and concluding that plain-error review was warranted where claim involved defendant's right to confront adverse witnesses and thus, implicated validity of entire proceeding (quotation omitted)); State v. Gilbert, 2009 VT 7, ¶ 7, 969 A.2d 125 (mem.) (citing Decoteau, and concluding that probationer was entitled "at best" to plain-error review, and finding no "obvious" error where legal question advanced by probationer—whether verbal threats can constitute "threatening behavior"—had not yet been decided by this Court). To be entitled to reversal on plain-error grounds, the error must

6

be "obvious," and defendant must show that "the error strikes at the heart of [his] constitutional rights or results in a miscarriage of justice." State v. Ayers, 148 Vt. 421, 426, 535 A.2d 330, 333 (1987). We have held that errors in unsettled areas of law are not obvious, and therefore not plain. See Gilbert, 2009 VT 7, ¶ 7 (citing State v. Butson, 2008 VT 134, ¶¶ 15-18, 185 Vt. 189, 969 A.2d 89).

¶ 15. We find no plain error here. It is the State's burden to show that defendant had fair notice of the condition he allegedly violated. State v. Bostwick, 2014 VT 97, ¶ 8, __ Vt. __, 103 A.3d 476. The condition may be "express" or "so clearly implied that a probationer, in fairness, can be said to have notice of it." Austin, 165 Vt. at 398, 685 A.2d at 1082. In this case, defendant was specifically informed by his probation officer that he must complete the third scheduled intake for DV Solutions or he would be cited for violating probation. See State v. Gleason, 154 Vt. 205, 216, 576 A.2d 1246, 1252 (1990) (explaining that due process requires notice of what acts constitute a violation and instructions from a probation officer can serve to provide notice); see also Lawson v. State, 969 So. 2d 222, 235 (Fla. 2007) (even though probation order contained no express time parameters for completion of drug-treatment program, commonsense reading of order provided probationer adequate notice that treatment program should be undertaken at beginning of probationary period).

¶ 16. It is undisputed that defendant failed to complete the third intake, and, as the trial court found, it was defendant's own actions that prevented him from completing the intake that day. Under these circumstances, the court did not commit plain error in finding that defendant violated the DV Solutions condition of his probation. We note, moreover, that at sentencing, defendant agreed that he had not completed the DV Solutions program and requested that his term of probation be continued so that he could complete programming. The trial court accepted his request and continued the term of probation for another year.

¶ 17.    Given our conclusion, we do not reach the issue of whether the evidence is sufficient to support a violation of the condition proscribing threatening behavior.    The requirement that defendant write a note of apology was not challenged on appeal.  As defendant and his attorney both stated to the trial court, the delay in completing the program was a sufficient reason for extending the term of probation.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 18.    **ROBINSON, J., dissenting.**    We have repeatedly insisted that probation conditions give the probationer fair notice of what conduct is prohibited and what conduct is required.  State v. Sanville, 2011 VT 34, ¶ 8, 189 Vt. 626, 22 A.3d 450 (mem.) ("To be charged with violating probation, a defendant must have notice before the initiation of a probation revocation proceeding of what circumstances will constitute a violation of probation." (quotation omitted)).  In Sanville, we held that the prohibition of "threatening behavior" in a probation condition did not give the probationer sufficient notice that "mouthing off" to his landlord would subject him to revocation.  Id. ¶¶ 9-10; see also State v. Johnstone, 2013 VT 57, ¶¶ 16-17, 194 Vt. 230, 75 A.3d 642 (revisiting ambiguity of term "threatening behavior").  We have been so insistent on clear and unambiguous probation conditions that we have declined to interpret a badly worded condition to mean what the court probably intended to say if the condition as drafted did not clearly reflect that meaning.  In State v. Galanes, we considered whether the probationer's spontaneous sexual encounter without prior approval of his probation officer ran afoul of the following condition: "You must inform your [probation officer] of the name and contact information of any person with whom you are planning to have a date or with whom you

8

are planning to begin a dating, sexual or romantic relationship, prior to the date or beginning of the relationship." 2015 VT 80, ¶ 2, ___ Vt. ___, ___ A.3d ___. We acknowledged the strength of the State's argument that under the circumstances, the sentencing court must have intended a broad reading to include the spontaneous sexual encounter at issue, but concluded that we were "required . . . to enforce a probation condition as it is written and not as we wish it had been written." Id. ¶ 22.

¶ 19. Accordingly, we have declined to read unwritten terms into probation conditions, or to enforce a probation officer's interpretation of a condition to impose requirements not expressly reflected in the language of the condition itself. See State v. Bostwick, 2014 VT 97, ¶¶ 12-24, ___ Vt. ___, 103 A.3d 476. In Bostwick, we considered a condition that required the defendant to "reside where your [s]upervising [o]fficer directs." Id. ¶ 16. The defendant secured housing approved by his probation officer for temporary purposes only. His probation officer instructed him to look for permanent housing daily, and gave him a specific deadline to show "a genuine housing search effort." Id. ¶ 4. Dissatisfied with the rigor of defendant's search, the defendant's probation officer sought revocation of probation based on a violation of the condition requiring defendant to "reside where your [s]upervising [o]fficer directs." We declined to interpret this condition to empower the supervising officer to require the defendant to meet specific housing-search requirements by a deadline established by the officer. Id. ¶ 12. We explained that "the probation officer crossed the line between condition interpretation and modification in imposing the new requirements regarding the rate of [housing-search] call frequency and the deadline by which defendant needed to find housing or be found in violation." Id. ¶ 12 (quotation omitted); see also State v. Rivers, 2005 VT 65, ¶ 16, 178 Vt. 180, 878 A.2d 1070 (reversing probation revocation because probation officer's application of the probation condition—that the defendant could not attend a fair unsupervised—was not "evident from [the] plain language" of the condition prohibiting contact with children).

9

Against this backdrop, the majority has essentially construed the probation condition in question here as requiring that defendant enroll in the DV Solutions program within a reasonable time period to be determined by his probation officer. To determine whether this reading is supported by the probation condition itself, or whether, as in Bostwick, it adds additional requirements not reflected in the probation condition itself, I turn to the text of Condition 31. It reads as follows: "31. DV Solutions." That's it. That's all it says. The entirety of the condition reflected in the certificate of probation is the name of a program for domestic-violence offenders.

¶ 20. Although the condition does not say, "Complete the DV Solutions program by the end of your term of probation," I am willing to infer that identification of the program as a probation condition contemplates completion of the program within the term of probation. But the majority goes much further than this. The condition decidedly does not say, "Complete the DV Solutions program within a reasonable time, as determined by your probation officer." Nor does it say, "Begin the DV Solutions program within a reasonable time, as determined by your probation officer." Yet the majority reads the condition as including both an implicit requirement that defendant begin the program in a specified timeframe and an implicit delegation of authority to the probation officer to determine that timeframe.

¶ 21. I cannot square this holding with our decisions in Bostwick and Galanes, nor with the line of cases addressing the clarity of probation conditions, noted above. If a condition requiring a defendant to contact his probation officer in advance if he is planning to have a sexual relationship cannot be stretched to reach a spontaneous sexual encounter, Galanes, 2015 VT 80, ¶¶ 20-22, and a condition requiring that a defendant live where his probation officer directs cannot be stretched to empower the probation officer to require the defendant to undertake a specified housing search by a date certain, Bostwick, 2014 VT 97, ¶ 12, then I do not see how a condition that says "DV Solutions" can be said to put this defendant on notice that failure to enroll in the program by a specified time determined by his probation officer will

10

subject him to revocation of probation. This is especially true given the absence of any evidence that having failed to enroll by the date established by his probation officer, defendant could not possibly complete the program within the term of his probation.

¶ 22.    I recognize that the standard for finding plain error is high, requiring "a showing that the error strikes at the heart of a defendant's constitutional rights or results in a miscarriage of justice." State v. Reynolds, 2014 VT 16, ¶ 33, 196 Vt. 113, 95 A.3d 973 (quotation omitted). But where the revocation of defendant's probation rests on an interpretation of the probation condition that is not supported by the text of the condition itself and that attributes to defendant's probation officer the authority to add timing requirements not reflected or reasonably implicit in the condition, I believe that standard is satisfied. For these reasons, I respectfully dissent.

_____

Associate Justice

11