VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      25-AP-011

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2025

State of Vermont v. Cody Morse*

}
}
}
}

APPEALED FROM:

Superior Court, Bennington Unit;

Criminal Division

CASE NO. 22-CR-03969; 22-CR-09336
Trial Judge: Jennifer L. Barrett

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a criminal division order revoking his probation.  We affirm.

The record reflects the following.  In July 2023, under an agreement with the State, defendant pleaded guilty to first- and second-degree aggravated domestic assault as well as two counts of violating conditions of release (VCR).  Complainant was the victim of both assaults, and one of the VCRs arose from defendant's violation of a condition prohibiting him from abusing or harassing complainant.  Defendant received a suspended sentence of four-to-eight years and a concurrent furlough sentence.  The court imposed conditions of probation.  Among these were: condition A, which provided that defendant "shall not be convicted of another crime or engage in criminal behavior"; condition 22, which provided that defendant "shall not abuse or harass [complainant]"; and condition 23, which prohibited defendant from "engag[ing] in violent or threatening behavior."

In August 2023, the State charged defendant with first-degree aggravated domestic assault as well as violating condition A, condition 22, and condition 23.  It alleged that defendant agreed to his probation conditions on July 25, 2023, and, on August 5, 2023, violated the conditions listed above by assaulting complainant at her home.

The State dismissed the assault charge after complainant failed to appear for the first day of defendant's trial in September 2024.  The court therefore set defendant's merits hearing on the alleged probation violations for the following day, which had been reserved for trial.

Complainant was present at the merits hearing.  She testified that her August 2023 report to the police was untruthful, stating that although she and defendant had a verbal argument on the morning in question, it never became physical.  Complainant acknowledged that, at the time she made her report, she provided the police with a cell-phone video and footage from a home-

security camera and indicated that both recordings captured portions of her interaction with defendant that day. She stated, however, that she had been untruthful in her report—the cell-phone video was not from that day. She also testified that she was not certain the security-camera recording was from that day, and that her security system did not always work properly or create accurate recordings. The court admitted the home-security video over defendant's objection, based on complainant's testimony that she had a home-security camera that creates recordings, that the video showed the inside of her house, and that she had an argument with defendant. It did not admit the cell-phone video at this point, however, concluding that complainant's testimony did not establish a sufficient foundation.

After complainant testified, the State called A.B. Complainant then made a statement that appears in the transcript as, "[c]an you ask that she not be allowed [indiscernible] she [indiscernible]?" As the State asked the court to instruct complainant to not interact with other witnesses, complainant interjected, "[s]he lies." The court began instructing complainant on its expectations for courtroom behavior, and complainant again interjected. This statement, too, was not fully captured in the transcript, which indicates that complainant said: "[Indiscernible]. Okay." At this point, the court directed complainant to step out of the courtroom during A.B.'s testimony, explaining, "If you can't listen to my instruction while I'm giving it about not interacting with the witness, that's not an appropriate decorum for my courtroom." Complainant left, and, shortly thereafter, a member of court staff informed the court that complainant stated she was going to leave the building. The court asked if any party "ha[d] a problem with that." There was no objection.

A.B. then testified to the following. Complainant had been her best friend for a long time. On the morning of August 5, 2023, complainant called A.B. Complainant was "crying, hyperventilating, couldn't form a full sentence, took a lot of breathing to get her to be able to speak." Complainant told A.B. "that she was attacked again by [defendant]," and that she was upset as a result. Complainant further stated that her son saw the end of the fight and showed A.B. a cut on her hand. Complainant's lip was "busted" on the inside and she had a bruise on her chest, which she told A.B. was from being "stepped on." The two women went to the police department to file a report.

The State next called a police officer, who testified as follows. On August 5, 2023, he spoke with complainant at the police department. He noted that she had a cut on her finger. Complainant provided him with a cell-phone camera video. The court admitted this video into evidence based on the police officer's testimony. Finally, the State called defendant's probation officer, who testified that he reviewed the probation conditions with defendant.

Defendant then testified that on the morning in question he and complainant had a verbal argument, but denied assaulting complainant in the course of this dispute.

The court made the following findings on the record and by a preponderance of the evidence. On August 5, 2023, defendant was subject to condition A, condition 22, and condition 23. The court did not find credible complainant's testimony denying that defendant assaulted her on that date. It also did not credit defendant's testimony that the fight was not physical. The court did, however, credit A.B.'s testimony that complainant called her that morning, and made an excited utterance that "there was a physical altercation with [defendant]" that "resulted in a cut on her hand and a bruise on her chest and that she was stepped on and that that bruise was more pronounced in the days following, and that [A.B.] observed those injuries." The court noted that it considered both videos, and that the home-security video included "lots of yelling

2

and yelling to get off of me," but that A.B.'s testimony alone established that defendant engaged in violent and threatening behavior and abuse of complainant, thus violating his conditions.

At defendant's December 2024 sentencing hearing, the court revoked his probation. It explained that although defendant had many supports in the community and it was to his credit that he completed courses while incarcerated, his conduct demonstrated that conditions of probation were insufficient to protect complainant. It also reasoned that it would unduly depreciate the seriousness of the violation to allow defendant to remain on probation and that confinement was necessary to protect the community from further criminal activity.

On appeal, defendant argues that the trial court erred in: (1) excluding complainant from the courtroom during A.B.'s testimony; (2) admitting complainant's statement to A.B. as an excited utterance; (3) concluding that the home-security and cell-phone videos were properly authenticated; (4) finding that neither defendant nor complainant were credible in denying that a physical altercation occurred on the date in question; and (5) failing to provide adequate justification for its decision to revoke probation.

In a probation-revocation proceeding, the State bears the burden of establishing that a probation violation occurred by a preponderance of the evidence. State v. Decoteau, 2007 VT 94, ¶ 8, 182 Vt. 433. The State may meet its burden by demonstrating that the probationer violated an express condition of probation. Id. Where this showing is made, "the burden of persuasion shifts to the probationer to demonstrate that his violation was not willful but, instead, resulted from factors beyond his control." Id. "In determining whether a probationer has violated his conditions, the trial court must first make a factual determination of the probationer's actions, and then make an implicit legal conclusion that the probationer's actions violated his probationary terms." State v. Burnett, 2022 VT 30, ¶ 13, 216 Vt. 561 (quotation omitted). We will affirm the court's factual findings if supported by the evidence and will uphold its legal conclusions where they are reasonably supported by the evidence and do not constitute an erroneous interpretation of the law. Id.

We first consider defendant's argument that excluding complainant from the courtroom violated his right to a public proceeding. He argues that this right is secured by the Sixth Amendment to the U.S. Constitution, which provides, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Defendant did not object when the court, on its own motion, directed complainant to leave the courtroom during A.B.'s testimony. As a result, this argument is reviewable, if at all, only for plain error. Decoteau, 2007 VT 94, ¶ 11. We have applied plain-error analysis in probation-revocation proceedings where important interests and fundamental rights are at stake. Id. Assuming for the sake of argument that defendant's claim is appropriately reviewed under this standard, he has not demonstrated plain error. Plain error exists "only in the rare and extraordinary case where the error is obvious and so grave and serious that it strikes at the very heart of a defendant's constitutional rights or adversely affects the fair administration of justice." State v. Davis, 157 Vt. 506, 510 (1991). Here, defendant fails to show that the error was "obvious." He argues that although this Court has not addressed whether the Sixth Amendment public-trial right attaches at a probation-violation hearing, other states have concluded that it does; on the basis of these analyses, he urges us to reach the same result. But we have held that "errors in unsettled areas of law are not obvious, and therefore not plain." State v. Provost, 2014 VT 86A, ¶ 14, 199 Vt. 568. Because defendant raises a novel constitutional challenge that is not an obvious error, he has not demonstrated plain error.

3

Defendant also argues that the court erred in admitting complainant's statement to A.B. as an excited utterance. We review the admission of evidence in probation-revocation hearings for abuse of discretion. State v. Eldert, 2015 VT 87, ¶ 14, 199 Vt. 520. The Vermont Rules of Evidence do not apply in probation-revocation proceedings. V.R.E. 1101(b)(3). The court must, however, make an explicit finding that there is good cause for dispensing with a probationer's confrontation right and admitting hearsay into evidence. State v. Austin, 165 Vt. 389, 396 (1996). This was not the path the court took here. Rather, it concluded that A.B.'s testimony fell within the excited-utterance exception to the hearsay rule. Under V.R.E. 803(2), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is "not excluded by the hearsay rule, even though the declarant is available as a witness." "A statement need not be made immediately after the startling event in order to qualify"; rather, "[t]he key inquiry is into the condition of the declarant." State v. Jackson, 2008 VT 71, ¶ 9, 184 Vt. 173 (quotation omitted).

Defendant has not demonstrated an abuse of discretion here. A.B.'s testimony that complainant was crying, hyperventilating, and struggling to form full sentences supports the court's determination that the declarant was under the influence of a startling event. See In re Est. of Peters, 171 Vt. 381, 392 (2000) (concluding that witness's testimony that declarant "was visibly upset, crying and rocking back and forth as she repeatedly said 'I can't believe he raped me' " supported court's determination that declarant was under influence of startling event and statements were appropriately admitted as excited utterance). Defendant compares this case to State v. Lemay, where we concluded that a declarant's statement "[s]everal days" after the alleged startling event was not properly admitted as an excited utterance where the State failed to show that the declarant's excitement was caused by the event she was describing. 2006 VT 76, ¶¶ 2, 9, 180 Vt. 133. Lemay is inapposite because in this case, the State presented evidence that complainant was upset because of a fight with defendant which occurred earlier that morning. Defendant's comparison to State v. Crawford fails for the same reason. 2018 VT 119, ¶ 8, 208 Vt. 662 (mem.) (rejecting argument that statements made while declarant was "crying and fearful" were admissible as excited utterances where State failed to establish declarant was under stress of excitement of startling event or condition at time statements made). While "not every sad or fearful statement is an excited utterance," this case is fundamentally different from Crawford because here, the State established the requisite link between complainant's emotional state and the event at issue. Id.

Because we reject defendant's argument on this point, we need not reach his challenges to the video evidence admitted by the trial court. See Eldert, 2015 VT 87, ¶ 26 (explaining that error in probation-revocation proceeding is harmless if, without considering offending evidence, there is still overwhelming evidence to support conviction and evidence in question did not in any way contribute to conviction). As noted above, the trial court explicitly stated that A.B.'s testimony, standing alone, supported its findings by a preponderance of the evidence. Although defendant argues that we should nonetheless consider whether the video evidence impacted the court's determination, doing so would require that we usurp the trial court's role as the finder of fact and reweigh the evidence on appeal. Such inquiry is beyond the scope of our review. See Burnett, 2022 VT 30, ¶ 13.

We reject defendant's argument that the trial court abused its discretion in concluding that neither complainant nor defendant testified credibly on similar grounds. As we explained in State v. Woolbert, on review of a court's findings at a probation-revocation hearing, "[i]t is not our role to second-guess a court's decision as to whom to believe; rather, our duty is to ensure

4

that the court's findings are supported by the evidence." 2007 VT 26, ¶ 9, 181 Vt. 619 (mem.). Defendant has not demonstrated that the court's findings are not supported by the evidence.

Finally, defendant challenges the court's decision to revoke his probation. Revocation of probation is governed by 28 V.S.A. §§ 303 and 304. Where, as here, "a violation is established, the court may revoke probation and order the defendant to serve the suspended sentence, or it may, in its discretion, impose one or more of the statutorily authorized alternative dispositions as set forth in 28 V.S.A. § 304." State v. Wheelock, 2023 VT 52, ¶ 32, 218 Vt. 442. Under 28 V.S.A. § 303(b), "[t]he court shall not revoke probation and order the confinement of the probationer unless the court finds on the basis of the original offense and the intervening conduct of the probationer that," among other things, "confinement is necessary to protect the community from further criminal activity by the probationer" or "it would unduly depreciate the seriousness of the violation if probation were not revoked."

Defendant contends that the court failed to justify its reason for revocation or to consider options other than revocation. This argument is not supported by the record. The trial court explained that although defendant's community supports and completion of programming while incarcerated were positive factors, his conduct demonstrated that conditions of release were insufficient to protect complainant, and confinement was necessary to protect the community from further criminal activity by defendant. Id. § 303(b)(1). It further noted that it had in mind the findings it made at the violation hearing and concluded that it would unduly depreciate the seriousness of the violation if probation were not revoked. Id. § 303(b)(3). Defendant's argument that the trial court could have reached a different conclusion does not demonstrate that the court abused its discretion in revoking his probation.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice

5