2015 VT 87











State v. Eldert (2014-141)

 

2015 VT 87

 

[Filed 19-Jun-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 87
 
 


 


 
 
 No. 2014-141
 
 


 


 
 
 State of Vermont
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Rutland Unit,
 
 
 
 
  
 
 
 Criminal Division
 
 
 
 
  
 
 
  
 
 
 
 
 Stephen L. Eldert
 
 
 January Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Theresa
 S. DiMauro, J.
 
 
 
 
  
 
 


John R. Treadwell, Assistant Attorney General, Montpelier,
and Kevin R. Klamm, Rutland

  County Deputy State’s Attorney, Rutland, for
Plaintiff-Appellee.

 

Matthew F. Valerio, Defender General, and Kerry B. DeWolfe,
Appellate Defender, Montpelier,

  for Defendant-Appellant.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund,
Robinson and Eaton, JJ.

 

 

¶ 1.            
EATON, J.   Defendant Stephen L. Eldert appeals the
revocation of his probation resulting from a violation of a probation condition
that he not purchase, possess, or consume alcohol.  We conclude that the
court erred in admitting unreliable hearsay evidence at the revocation hearing,
and therefore reverse.

¶ 2.            
In October 2004, defendant pled guilty to lewd and lascivious conduct,
13 V.S.A. § 2601, unlawful restraint in the second degree, id.
§ 2406(a), and multiple violations of conditions of release, id.
§ 7559(e).  The court sentenced defendant to two to ten years, all
suspended, and placed defendant on several conditions of probation, including
condition 1 that he “must not buy, have or drink any alcoholic beverages.”

¶ 3.            
At some point thereafter, defendant’s probation supervision was
transferred to Delaware through the Interstate Compact Offender Tracking System
(ICOTS).[1]
 While in Delaware, defendant was convicted of several crimes and placed
on probation in addition to his ICOTS-supervised Vermont probation.
 Subsequently, a Delaware court found defendant in violation of his
Delaware probation conditions, revoked his probation, and imposed the
underlying suspended sentence.  On April 26, 2013, while defendant was
still serving his Delaware sentence, the Delaware Department of Corrections
informed defendant’s Vermont probation officer that it was no longer willing to
supervise his Vermont probation upon release from his Delaware sentence.

¶ 4.            
In May 2013, defendant’s Vermont probation officer filed a violation of
probation complaint in the superior court, criminal division.  Relying on
documentation received from Delaware through ICOTS indicating that “Mr. Eldert
admitted to using alcohol, Percocet, and cocaine,” the complaint alleged that
defendant violated condition 1.  The complaint requested a warrant to return
defendant to Vermont once he served his prison sentence in Delaware.  A
warrant was issued in September 2013, and defendant was brought back to
Vermont.  Defendant denied the allegations that he had violated condition
1 while in Delaware by consuming alcohol, and was incarcerated in Vermont
pending a merits hearing.

¶ 5.            
At the State’s request, approximately one hour prior to the scheduled
start of the merits hearing, counsel for both parties met on the record with
the court to discuss the State’s planned use of hearsay evidence that is the
subject of this appeal.  The State informed the court that its sole
evidence in support of the alleged violation was defendant’s Vermont probation
officer “testifying as to information on what occurred in Delaware by virtue of
documentation and direct communication with the [probation officers] there.”
 The State requested a “weather report” from the court as to whether the
proposed hearsay evidence was reliable and admissible, stating it was
“conceivable that the court might want direct testimony from a Delawarean,”
adding “I don’t think it’s necessary, but the court’s preferences are my first
wish.”  Defendant objected to a continuance for the State to procure live
testimony, explaining that the defense was ready to proceed as scheduled.
 The court declined to rule on the matter prior to the start of the
hearing, stating “well, we’ll . . . see what happens.”

¶ 6.            
During the merits hearing, defendant’s Vermont probation officer, the
sole witness for the State, testified that she received various documents
through ICOTS indicating that defendant had violated condition 1 of his Vermont
probation while in Delaware.  In support of its violation-of-probation
complaint, the State sought to admit these documents through defendant’s
probation officer’s testimony as State’s exhibits 1, 2, and 3.

¶ 7.            
State’s exhibit 1, dated November 2, 2012, is captioned “Violation
Report.”  The report was purportedly authored by defendant’s Delaware
probation officer, and then reviewed and approved by a Delaware Department of
Corrections supervisor.  The report alleges violations of two of
defendant’s Delaware probation conditions, the first prohibiting possession or
consumption of a controlled substance or other dangerous drugs unless
prescribed lawfully, and the second requiring compliance with “any special
conditions imposed by your supervising officer, the Court and/or the Board of
Parole.”  The report indicates, in relevant part, that defendant made
three admissions: (1) “[o]n 10/19/12, Mr. Eldert admitted to using alcohol”;
(2) “[o]n 10/26/12 he was released from detox and admitted to drinking alcohol
(vodka) that night”; and (3) “[o]n 11/1/12, when confronted with the fact the
he smelled strongly of alcohol, Mr. Eldert admitted to drinking one pint of
vodka the night before.”  The report does not make clear to whom or under
what circumstances defendant made the admissions.  The State presented
exhibit 1 as a single report consisting of four pages.  The report is
facially incomplete, and confusingly, there are five pages included in the
report, only the last three of which are numbered.[2]  The fourth page of the report,
labeled “4 of 5” and dated April 26, 2013, appears to be an incomplete,
unsigned order from the Kent County Superior Court acknowledging the alleged
violation of probation, executing a warrant, and setting bail at $9,000.
 The report and the court order, dated seventeen months apart, were not
signed, notarized, certified, otherwise attested to, or showed any indication
that they had been filed in court.

¶ 8.            
State’s exhibit 2 is an ICAOS form entitled “Offender Violation Report.”[3]  The form, addressed to “Vermont”
and dated April 26, 2013, stated a violation of probation hearing was held on
March 1, 2013 and that “[o]ffender was found in violation.”  The form
contains a field labeled “Current Specific Violations,” where writers are to
“[s]pecify [the] violation and provide all details to support the violation
below, including evidence, witnesses’ names, and witnesses’ contact
information,” which was left blank.  The form identifies Daniel Welsh as
defendant’s Delaware probation officer, but is unsigned, uncertified, contains
no indication it is an official document, and has no information connecting it
to defendant’s alleged admissions of drug and alcohol abuse.

¶ 9.            
State’s exhibit 3 is entitled “Violation of Probation Sentence Order.”
 The supposed order is dated March 1, 2013, and simply states: “defendant
is found in violation.”  The report has no information concerning the
basis for the violation, and makes no mention of defendant’s alleged
consumption of alcohol.  There is nothing indicating the order is an
official court record, such as an official stamp or seal.  Although the
document identifies the presiding judge, it does not provide any information
about the nature of the violation.  The document is also unsigned,
uncertified, and contains nothing linking it to the violation report other than
defendant’s personal information and the case number.

¶ 10.        
At the Vermont probation-revocation hearing, defendant’s Vermont
probation officer testified that during the course of her supervision she never
spoke to defendant or his former Delaware probation officer, Daniel Welsh,
whose name appears on the reports.  She testified that one week before the
hearing on the merits, she spoke with defendant’s current Delaware probation
officer over the phone who confirmed the information in the reports authored by
Mr. Welsh, but who did not have first-hand knowledge of defendant’s admissions.

¶ 11.        
Defendant objected throughout the hearing to his probation officer’s
testimony and the admission of the documents as unreliable hearsay.
 Defendant consistently objected to the absence of any witnesses with
personal knowledge of his alleged confessions.  The only explanation
offered by the State was that, “[o]bviously, Delaware has no particular interest
in coming to Vermont.”  The court addressed defendant’s confrontation
objections by stating that any judges named in the ICOTS documents could not be
called as witnesses “to testify about what they did in any proceeding,” then
moved on to discuss the reliability of the proffered evidence.  The court
inquired as to whether officer Welsh was still with the Bureau of Community
Corrections in Delaware, to which the State responded, “I don’t know if Mr.
Welsh moved on to greener pastures . . . .  More
importantly, [defendant’s Vermont probation officer] had the documentation on
which she brought these charges.”  Over defendant’s objections, the trial
court admitted State’s exhibits 1, 2, and 3 into evidence and permitted his
Vermont probation officer to testify as to their contents.  Based on that
evidence, the court found defendant violated condition 1 and revoked his
probation.  This appeal followed.

¶ 12.        
Defendant makes several arguments in support of his position that the
trial court erred in revoking his probation.  Specifically, he argues that
the court’s findings were not supported by the State’s evidence at the hearing,
and that the court failed to find “good cause” for dispensing with his right to
confront adverse witnesses in violation of the Fourteenth Amendment to the
United States Constitution and Vermont Rule of Criminal Procedure 32.1.

¶ 13.        
In a probation-revocation proceeding, the State must show, by a
preponderance of the evidence, that a probationer violated an express or
clearly implied condition.  State v. Decoteau, 2007 VT
94, ¶ 8, 182 Vt. 433, 940 A.2d 661; see also State v.
Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996) (“The State
meets its burden by showing that there has been a violation of the express
conditions of probation, or of a condition so clearly implied that a
probationer, in fairness, can be said to have notice of it.” (citations,
quotation marks, and emphasis omitted)).  Whether a probation violation
occurred is a mixed question of fact and law.  Austin, 165 Vt.
at 398, 685 A.2d at 1082.  The trial court must first make findings
of fact related to the actions of the probationer, then make “an implicit legal
conclusion that certain acts constitute a violation of the probationary terms.”
 Id. (quotation omitted).  On appeal,
we will uphold the trial court’s findings of fact if they are fairly and
reasonably supported by credible evidence, and will only disturb legal
conclusions if they are not reasonably supported by those facts.  Decoteau,
2007 VT 94, ¶ 8.

¶ 14.        
We review evidentiary rulings in both civil and criminal trials for
abuse of discretion.  See State v. Groce, 2014 VT 122,
¶ 13, ___ Vt.___, 111 A.3d 1273 (noting, in reviewing criminal
conviction, that “[w]e review the trial court’s evidentiary
rulings for abuse of discretion.”); Follo v. Florindo,
2009 VT 11, ¶ 19, 185 Vt. 390, 970 A.2d 1230 (explaining
that we review evidentiary rulings in civil trials for abuse of discretion).  As a probation-revocation hearing is a hybrid
criminal-civil proceeding, we review the admission of evidence in such hearings
for abuse of discretion.  See Decoteau, 2007 VT 94, ¶ 31
(Rieber, C.J., dissenting) (explaining that in a probation revocation
proceeding, “[t]he reliability of evidence is essentially a fact specific issue
within the trial court’s discretion, and therefore subject to reversal by this
Court only upon a showing of an abuse of discretion” (quotations omitted)); see
also United States v. Lloyd, 566 F.3d 341, 344 (3d Cir. 2009);
United States v. Williams, 443 F.3d 35, 46 (2d Cir. 2006).

¶ 15.        
We first address defendant’s argument that the trial court violated his
Fourteenth Amendment right to confrontation in admitting the three sets of
ICOTS documents and allowing his Vermont probation officer to testify regarding
their contents at the revocation hearing.  Defendant argues that these
statements constitute unreliable hearsay and thus should have been excluded.
 Defendant contends that without the hearsay evidence, there is no support
for the court’s finding that he violated condition 1 of his probation.
 For the following reasons, we agree.

¶ 16.        
“Hearsay is not categorically inadmissible in probation-revocation
hearings because the rules of evidence do not apply.”  Decoteau,
2007 VT 94, ¶ 12 (citing V.R.E. 1101(b)(3)).  Probationers are,
however, entitled to confront adverse witnesses under the Due Process Clause of
the Fourteenth Amendment.  Id. ¶ 12 (citing Gagnon v.
Scarpelli, 411 U.S. 778, 782 (1973)); see also V.R.Cr.P.
32.1(a)(2)(D).  Therefore, we have held that before a court may deny a
probationer the right of confrontation and admit hearsay evidence, it must make
an explicit finding on the record that there is “good cause” to do so.  Austin,
165 Vt. at 396, 685 A.2d at 1081.

¶ 17.        
While this Court has not expressly “establish[ed] the limits of what
does or does not constitute sufficient good cause for admitting hearsay into
evidence,” we have consistently recognized that a key factor in making that
determination is the reliability of the hearsay evidence sought to be
admitted.  Id.; Decoteau, 2007 VT 94, ¶ 12. 
In both Austin and Decoteau, we recognized that in addition to
the reliability of the hearsay evidence, many courts also consider the State’s
proffered reason for not presenting live-witness testimony in determining
whether there is “good cause” to deny confrontation.  Decoteau,
2007 VT 94, ¶ 12 n.1 (noting that some courts consider the
availability of the declarant, and whether the evidence is offered to prove the
central contested issue or is simply peripheral thereto); Austin,
165 Vt. at 395 (explaining that reliability is an essential factor but
recognizing that consideration of the State’s reason for not producing live-witness
testimony is also an important consideration (citing, inter alia, State v.
Yura, 825 P.2d 523, 530 (Kan. 1992) (requiring consideration of both
the government’s explanation of why confrontation is undesirable or impractical
and the reliability of the proffered hearsay evidence); State v.
Casiano, 667 A.2d 1233, 1239 (R.I. 1995) (same); Mason v.
State, 631 P.2d 1051, 1056 (Wyo. 1981) (same)).  In Austin,
however, we rejected the view of the federal district court in Finch v.
Vermont District Court that “reliability and good cause are separate prongs
that must independently be met before dispensing with a probationer’s
confrontation rights.”  Austin, 165 Vt. at 394, 685 A.2d
at 1080 (quotation marks omitted) (citing Finch v. Vt. Dist. Ct.,
No. 90-9, 1990 WL 312576, at *1 (D. Vt. Sept. 24, 1990) (unpub. mem.)).
 We noted that this view is “not shared by any of the federal circuits
that have considered the question,” and concluded that the reliability of the
proffered hearsay is a “critical factor” to consider when ruling on the
admissibility of hearsay in a probation revocation proceeding.  Id.
at 394-95, 685 A.2d at 1080.

¶ 18.        
In Austin, we cited favorably to United States v. Bell,
in which the United States Court of Appeals for the Eighth Circuit recognized
that in order to find “good cause” in a probation-revocation proceeding, “the
trial court . . . must balance the probationer’s right to
confront a witness against the grounds asserted by the government for not
requiring confrontation.”  785 F.2d 640, 642 (8th Cir. 1986). 
The Bell court noted that “[a]s is true of any balancing test, it is not
possible to articulate fixed rules on what the government must show to
establish ‘good cause’ in every case.”  Id.
at 642-43.  “However, there are several factors which should be evaluated
in examining the basis cited by the government for dispensing with
confrontation.”  Id. at 643.  Specifically, the court relied
upon two factors to determine whether there was “good cause.”  The first
is the government’s explanation for “why confrontation is undesirable or
impractical.”  Id.  “For example, the government might contend
that live testimony would pose a danger of physical harm to a government
informant,” or “that procuring live witnesses would be difficult or
expensive.”  Id.  The second factor is the reliability of the
evidence offered by the government in place of live testimony.  Id. 
As the Bell Court summarized:

[W]here
the government demonstrates that the burden of producing live testimony would
be inordinate and offers in its place hearsay evidence that is
demonstrably reliable, it has made a strong showing of good cause.  Where,
on the other hand, the government neither shows that presenting live
testimony would be unreasonably burdensome nor offers hearsay evidence
that bears indicia of reliability, the probationer is entitled to
confrontation.

 

Id.
(emphases added).  We conclude that Bell sets forth the appropriate
test for determining whether the State has met its burden for establishing
“good cause” to deny a probationer the right to confront adverse witnesses.[4]  Therefore, in a usual case, a trial
court must, at a minimum, evaluate both the reason offered by the State for not
providing live testimony and the reliability of the hearsay evidence
offered in its stead.[5]

¶ 19.        
Here, the State offered three exhibits into evidence: (1) a “Violation
Report”; (2) an “Offender Violation Report”; and (3) a “Violation of Probation
Sentence Order.”  Over defense counsel’s objections, the court admitted
the three documents received through ICOTS, and allowed defendant’s Vermont
probation officer to testify as to their contents.  In so doing the court
found that the State’s exhibits were “substantially reliable and can be
admitted without violating [defendant’s] confrontation rights.”  The court
explained that the documents were reliable by virtue of defendant’s Vermont
probation officer receiving them from Delaware through the ICOTS system. 
The court also reasoned that defendant’s Delaware probation officer filed the
documents contained within the exhibits in a Delaware court, and that “as an
officer of the Court, he certainly had an obligation to be truthful in filing
those documents, and those documents form the basis of the [violation of
probation sentence order].”  Because the court found the sources of the
ICOTS documents were a Delaware probation officer and judge, the court
concluded they were “as reliable, if not more reliable, than the toxicology
report found reliable by the Supreme Court in Finch and more reliable
than the affidavit of a police officer found unreliable by the Supreme Court in
Austin.”  The court stated that Austin was not controlling,
as a probation officer does not have the same adversarial relationship with a
probationer as a police officer has with a criminal defendant.

¶ 20.        
We agree with defendant that the factors considered by the trial court
do not provide sufficient evidence of reliability to justify denying defendant
his right to confrontation.  Although we have not adopted a formal test to
assess the reliability of hearsay evidence, we have held that hearsay may be
admissible in probation-revocation proceedings if it bears “traditional indicia
of reliability,” Austin, 165 Vt. at 396, 685 A.2d at 1081, and
have enumerated several “important considerations,” including: (1) whether
there is corroborative evidence; (2) whether the hearsay is an objective
fact, or a conclusory statement; (3) whether the hearsay is sufficiently
detailed; (4) whether the source of the hearsay has a personal or
adversarial relationship with the defendant, or other bias or motive to
fabricate; and (5) whether the hearsay is offered to prove the central
issue in the case, Decoteau, 2007 VT 94, ¶ 14.  See also Decoteau,
2007 VT 94, ¶ 31 (Rieber, C.J., dissenting) (citing State v.
James, 2002 ME 86, ¶ 15, 797 A.2d 732, 737; Bailey v.
State, 612 A.2d 288, 293 (Md. 1992)).

¶ 21.        
On these factors, we conclude that none of the admitted evidence bears
any traditional indicia of reliability.  See Austin, 165 Vt.
at 396, 685 A.2d at 1081; see also Decoteau, 2007 VT 94,
¶¶ 13-18 (reviewing for “traditional guarantees of trustworthiness”).
 Although we acknowledge that defendant’s Vermont probation officer
received the documents through ICOTS from defendant’s Delaware probation
officer, that does not, in and of itself, make them sufficiently reliable to
justify dispensing with defendant’s right to confrontation.[6]  Here, the documents themselves are
unsigned, unsworn, and in some instances undated.  They contain no
certification or indication they are part of an official court record.
 The record on appeal is unclear at best, and the discrepancy between the
number of pages of the exhibits as recounted by the prosecutor at the time of
their admission and the number of pages submitted as part of the printed case
cannot be reconciled.  In addition to the lack of traditional indicia of
reliability, there is no information clearly linking the subject matter of all
three exhibits to defendant’s alleged admission of alcohol use.  The
documents lack clarity and continuity not just in form, but in substance. 
It is unclear from the limited substantive information available concerning
defendant’s alleged admissions when defendant’s alleged alcohol consumption
took place, and when and to whom defendant made the alleged admissions.

¶ 22.        
We also disagree that the unsigned, unsworn reports received through
ICOTS—allegedly authored by defendant’s Delaware probation officer—are more
akin to a lab report than a police officer’s affidavit.  In Finch,
we upheld the admission of a detoxification-center report corroborating hearsay
testimony given by the defendant’s probation officer because the document
“appear[ed] to be the kind of medical report where, as we have noted in another
context, the specter of questionable credibility and veracity is not present.”
 State v. Finch, 153 Vt. 216, 218-19, 569 A.2d 494,
495 (1989), overruled in part on other grounds by Austin,
165 Vt. at 396-97, 685 A.2d at 1081 (quotations omitted).  In the
present case, there was no evidence corroborating the ICOTS documents other
than defendant’s Vermont probation officer’s testimony, which constitutes
double hearsay as the only Delaware probation officer to whom the Vermont
probation officer spoke did not have first-hand knowledge of defendant’s
supposed admissions.  See Bell, 785 F.2d at 644 (describing
testimony of probation officer recounting a conversation with FBI agent who had
with no first-hand knowledge of the events as “double hearsay”); cf. Lloyd,
566 F.3d at 345 (explaining that out-of-court statements containing
multiple layers of hearsay “have been recognized as unreliable”).  The
ICOTS documents are not akin to the detoxification-center report in Finch,
which was admissible because it was similar to “routine, standard, and unbiased
medical reports by physician specialists.”  Langlois v. Dep’t of
Emp’t & Training, 149 Vt. 498, 502, 546 A.2d 1365, 1368
(1988) (quoting Richardson v. Perales, 402 U.S. 389, 404
(1971)), cited in Finch, 153 Vt. at 218-19, 569 A.2d at
495.

¶ 23.        
In Austin, we held that the affidavit of a New Hampshire police
officer was inadmissible in a probation-revocation proceeding because “[t]he
relationship between police officers and those whom they arrest is much more
personal and adversarial in nature than that between chemists and those whose
urine they test.”  165 Vt. at 397, 685 A.2d at 1081-82 (quoting Bell,
785 F.2d at 644).  We further noted that “the Vermont Rules of
Evidence specifically exclude investigative reports by police and other law
enforcement personnel” from exceptions to the hearsay rule.  Id.,
685 A.2d at 1082 (citing V.R.E. 803(8)(B)(i)).  In this case, there
is no evidence as to who took defendant’s alleged admissions, and therefore we
cannot assess the nature of that relationship and whether there was bias or
motive to fabricate.  Assuming that defendant made his admissions to his
Delaware probation officer, such a relationship is personal, and has the
potential to become adversarial upon the filing of a revocation complaint, such
that it favors a probationer’s right to confrontation.  Further, these
documents are unsigned, unsworn, and uncertified, and thus the “circumstances
indicate [a] lack of trustworthiness.”  V.R.E. 803(8)(b)(iv).  Unlike
the ICOTS documents offered by the State, the affidavit in Austin,
although held to be inadmissible in that case, was signed, sworn, notarized,
and came with a penalty of perjury for falsifications or misrepresentations
contained therein.  Falsifications or misrepresentations in unsigned
reports such as the ICOTS documents at issue in this case, unlike the signed
affidavit in Austin, carry no such penalties, and thus the
trustworthiness element is absent.

¶ 24.        
With regard to the remaining reliability factors, neither the documents
nor defendant’s Vermont probation officer’s testimony contain adequate
information or detail regarding the circumstances of defendant’s admissions.
 None of the documentation states to whom defendant made the admissions,
and important information is missing concerning when the disclosures were made
and when the offending behavior took place.  Finally, and importantly, the
ICOTS documents and defendant’s Vermont probation officer’s testimony were
offered to prove the central issue in the case, i.e., whether defendant
consumed alcohol while in Delaware in violation of condition 1, and constituted
the entirety of the State’s evidence in the revocation proceeding.  Thus,
upon consideration of these factors, we conclude that none of the documents
demonstrate sufficient, if any, indicia of reliability.

¶ 25.        
Notwithstanding this lack of reliability, supra ¶ 20, we
next address the second factor of the Bell balancing test: the reason
presented by the State for failing to procure a live witness.  At hearing,
the State’s proffered reason for failing to procure defendant’s Delaware
probation officer was that “[o]bviously, Delaware has no particular interest in
coming to Vermont.”[7]
 This reason is woefully insufficient.  Other courts faced with
evaluating the sufficiency of the prosecution’s offer in this regard have recognized
the validity of various considerations for failing to procure live-witness
testimony.  See, e.g., United States v. Simms, 757 F.3d
728, 733 (8th Cir. 2014) (stating fear of violence and reprisal may provide
basis for not producing witness); United States v. Martin,
371 F.3d 446, 449 (8th Cir. 2004) (accepting fact that witness was
out of state, and that attempts to locate the witness had failed, as
“reasonably satisfactory” reason proffered by government for lack of live
testimony); Bell, 785 F.2d at 643 (explaining that good reasons for
not procuring live testimony may include “danger of physical harm” to an
informant or the level of difficulty or cost); United States v. Simmons,
812 F.2d 561, 564 (9th Cir. 1987) (recognizing difficulty and cost as possible
explanations).  In this case, the State failed to demonstrate that it made
any effort to determine the actual availability of defendant’s Delaware
probation officer, or what the cost or dangers in procuring him may have
been.  In light of the insufficiency of this explanation and the
aforementioned lack of indicia of reliability underpinning State’s exhibits 1,
2, and 3, the court erred by concluding that there was “good cause” to deny
defendant his right to confrontation.

¶ 26.        
Having concluded that the State failed to establish “good cause” for
dispensing with defendant’s confrontation right, we further hold that the
admission of unreliable hearsay was not harmless error.  “An error is harmless if, without considering the offending evidence,
there is still overwhelming evidence to support the conviction and the evidence
at issue did not in any way contribute to the conviction.”  Groce,
2014 VT 122, ¶ 19 (quotation omitted).  Without the documents,
there was no evidence establishing that defendant consumed alcohol in violation
of his probation condition 1.  Because the erroneously admitted ICOTS
documents constituted the entirety of the State’s evidence in support of its
complaint that defendant violated his probation, their admission cannot be
harmless.  See Decoteau, 2007 VT 94, ¶ 19 (concluding
that erroneous admission of hearsay was not harmless error where “[t]he State
demonstrated . . . the reasons for [the defendant’s]
violation solely through improperly admitted hearsay evidence.”).  It is
thus necessary to vacate the probation violation determination.

¶ 27.        
Because the issue is likely to arise again, we also address defendant’s
argument that Vermont Rule of Criminal Procedure 32.1 provides a right to
confrontation above and beyond the constitutional requirements set forth in Morrissey
and Gagnon, and which is recognized in Austin and Decoteau.
 Rule 32.1 states that at a revocation proceeding, a probationer “shall be
given: . . . the opportunity to question opposing
witnesses.”  V.R.Cr.P. 32.1(a)(2)(D).  The preceding section,
V.R.Cr.P. 32.1(a)(1)(C), applies to preliminary probation revocation hearings,
and states, “[t]he probationer shall be given . . . upon
request, the opportunity to question opposing witnesses unless, for good cause,
the judicial officer decides that justice does not require the appearance of
the witness.”  We recognize “the time-honored precept” in statutory
interpretation that expressio unius est exclusio alterius (the
expression of one thing is the exclusion of another).  State v.
Fontaine, 2014 VT 64, ¶ 10, ___ Vt. ___, 99 A.3d 1034
(quotation omitted).  Nonetheless, we read an implicit good-cause
exception into section 32.1(a)(2)(D).  Defendant argues the rule is
unambiguous, and that the clear language permits no exceptions to a
probationer’s right to confront adverse witnesses.

¶ 28.        
The Vermont Rules of Criminal Procedure are based in part on the Federal
Rules of Criminal Procedure.  Reporter’s Notes, V.R.Cr.P. 1.  Prior
to its amendment in 2002, Federal Rule 32.1(a)(2)(D) contained language
identical to Vermont’s current Rule 32.1(a)(2)(D).  See Reporter’s Notes,
V.R.Cr.P. 32.1 (“This rule, which provides for revocation or modification of
probation, is based on Federal Rule 32.1, as added effective December 1,
1980 . . . .”); see also F.R.Cr.P. 32.1(a)(2)(D) (2001)
(amended 2002).  In spite of defendant’s argument that the language of
Vermont Rule 32.1 makes no allowances, federal courts consistently read a
good-cause exception into probationers’ statutory right to question adverse
witnesses under Federal Rule 32.1.  See, e.g., Morrissey,
408 U.S. at 489; Bell, 785 F.2d at 642-43; United
States v. Comito, 177 F.3d 1166, 1170-72 (9th Cir. 1999); United
States v. Walker, 117 F.3d 417, 420 (9th Cir. 1997); United
States v. Zentgraf, 20 F.3d 906, 909 (8th Cir. 1994).
 Federal jurisprudence on this matter is persuasive, see, e.g., State v.
Madigan, 2015 VT 59, ¶ 13, ___ Vt. ___, ___ A.3d ___,
and we therefore read an implicit good-cause exception into Vermont
Rule 32.1(a)(2)(D).  To hold otherwise would require the State to
procure witnesses at the probationer’s request in every probation-revocation
proceeding regardless of the difficulty, time, or expense.  Such a burden
on the State is untenable.

¶ 29.        
In sum, we hold that the trial court abused its discretion in finding
“good cause” to admit State’s exhibits 1, 2, and 3 and allowing defendant’s
Vermont probation officer to testify as to their content.  Because the
documents and testimony constituted the State’s only evidence at hearing, the
trial court’s factual finding that defendant consumed alcohol in violation of
his probation condition is not reasonably supported by credible evidence and
cannot stand.  Without that finding, this Court cannot affirm the trial
court’s legal conclusion that defendant violated his probation.

Reversed.


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 














[1]  ICOTS is a “web-based system that facilitates
the transfer of supervision for probationers and parolees” between the fifty
states and three territories that are signatories to the Interstate Compact for
Adult Offender Supervision (ICAOS).  See What is ICOTS?, Interstate
Comm’n for Adult Offender Supervision, http://www.interstatecompact.org/ICOTS/ WhatisICOTS.aspx (last visited May 22, 2015). 
The purpose of ICAOS, which Vermont enacted in 2000, is:

through means of joint and
cooperative action among the compacting states . . . to
provide the framework for the promotion of public safety and protect the rights
of victims through the control and regulation of the interstate movement of
offenders in the community; . . . to provide for the
effective tracking, supervision and rehabilitation of these offenders by the
sending and receiving states; and . . . to equitably
distribute the costs, benefits and obligations of the compact among the
compacting states.

28 V.S.A.
§ 1351(a).





[2]  The transcript from the revocation
hearing indicates that the State offered, and the court admitted, three
exhibits at the hearing.  On appeal to this Court, no documents in
appellant’s printed case contain labels indicating their admission as
exhibits.  The transcript reflects that the documents admitted as State’s
1, 2, and 3 totaled ten pages; however, appellant submitted eleven pages as
part of his printed case.  This is most likely attributable to the fact
that State’s 1, as presented at trial, contained four pages, while in
appellant’s printed case it consists of five.





[3]
 Once again, there is a discrepancy between the number of pages in State’s
2 as presented at the revocation hearing, and as contained in appellant’s
printed case.  At the hearing, the State presented exhibit 2 as consisting
of four pages, while in the printed case the report appears to include three
pages. It is unclear whether the State intended to include a duplicate of the
first page of State’s 3, the alleged violation of probation sentence prder
(discussed below), as an attachment to exhibit 2, thus accounting for the
fourth page presented at the hearing.





[4] 
From the many federal and state courts that have been called upon to consider
the bounds of “good cause” under Morrissey and Gagnon, “[t]wo
tests have emerged for determining whether the denial of the right to
confrontation in that context will comport with constitutional due
process.”  Henderson v. Commonwealth, 736 S.E.2d 901, 906
(Va. 2013).  The first test, dubbed the “reliability test,” “permits
admission of testimonial hearsay in revocation proceedings if it possesses
substantial guarantees of trustworthiness.”  Id. (citing Crawford v.
Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003)).  This test would
admit “sufficiently reliable hearsay evidence without a showing of cause for
the declarant’s absence.”  Lloyd, 566 F.3d at 344-45
(citations omitted).  The second test, the “balancing test,” “requires the
court to weigh the interests of the defendant in cross-examining his accusers against the interests of
the prosecution in denying confrontation.”  Henderson,
736 S.E.2d at 906 (citing Lloyd, 566 F.3d at 344-45 (“The
reliability of proffered hearsay is a principal factor, although not the sole
factor, relevant to the releasee’s interest in confrontation.”)); see also Bell,
785 F.2d at 642 (listing two factors—reliability and justification for not
producing a live witness—to consider when evaluating the government’s proffered
justification for denying confrontation).  It is this second, or
“balancing test,” as set forth in Bell, that we hold should be applied
by the criminal division in probation revocation proceedings in the State of
Vermont.  In adopting this balancing test, however, we recognize that
there may be instances where the reliability of the State’s hearsay evidence is
so poor that, generally speaking, no justification for the witness’ absence
could overcome the deficit.  Additionally, “[i]n some cases, the
releasee’s interest in confrontation may be overwhelmed by the hearsay’s
reliability such that the Government need not show cause for a declarant’s
absence.”  Lloyd, 566 F.3d at 345.  And thus, in both
situations, we reject a per se rule that the criminal division’s failure to
explicitly address the State’s justification for not producing a live witness
would amount to reversible error in all cases.  See id.  With
those caveats in mind, we nevertheless emphasize that a probationer may have a
sufficiently legitimate interest in confrontation even where the State’s
hearsay bears some degree of reliability and thus it is a sounder practice to
address both factors when ruling on the admissibility of hearsay evidence in a
probation-revocation proceeding.  Id.

 





[5]
 We also take this opportunity to clarify the appropriate use of the term
“good cause.”  “Good cause” relates to the broader question of whether a
court may deny a probationer the right to confront adverse witnesses and is not
to be confused with the justification offered by the State as to why the
witness is not present.  Indeed, the State may offer a good justification
for not producing a witness, but we caution the courts that labeling the
State’s proffered justification as “good cause” invites unnecessary confusion
into the analysis.  At a revocation hearing, before a probationer’s right
to confront adverse witnesses may be denied, a court must make an explicit
finding that there is “good cause” to do so.  The State’s proffered
justification for not providing the witness—whether good, bad, or somewhere in
between—is simply one aspect of that analysis.





[6]
 The State does not contend that any of the ICOTS documents fit within a
traditional exception to hearsay thereby rendering the good-cause analysis
moot.  Austin, 165 Vt. at 395, 685 A.2d at 1080-81 (“[I]n
determining the reliability of hearsay evidence offered at probation revocation
hearings, the federal circuit courts have been guided by the traditional
hearsay exceptions and exclusions from hearsay as recognized in the rules of
evidence.”).  We will not consider arguments not adequately raised and
briefed.  Johnson v. Johnson, 158 Vt. 160, 164 n.*,
605 A.2d 857, 859 n.* (1992).  Other courts, however, have held that
ICOTS documents fall within the public-records exception under the equivalent
of Vermont Rule of Evidence 803(8)(A).  See State v. Davis,
No. 1 CA-CR 13-0566, 2014 WL 1056500, at *2 (Ariz. Ct. App. Mar. 18, 2014)
(unpub.).

We recognize that there may be utility and convenience
to a probation officer in relying on the ICOTS network to send and receive
documents.  While ICOTS documents may assist in a probation officer’s
supervision of a probationer, or in deciding whether or not to file a violation
complaint, it does not follow that such documents are necessarily admissible
into evidence solely by virtue of them being sent and received through
ICOTS.  As with any piece of evidence, ICOTS documents must meet the
requisite standard of admissibility, whether that standard is pursuant to the
rules of evidence, or, as here, the Constitution.





[7] 
The record reveals no effort by the State to obtain the attendance of
defendant’s Delaware probation officer through formal means or otherwise. 
Rather, the record shows that, approximately one hour prior to the start of the
revocation hearing, the State asked the court whether such attendance was
necessary.  The court properly denied a pre-hearing ruling on this issue,
instead leaving the State to its proof.