**ENTRY ORDER**

2021 VT 26

SUPREME COURT DOCKET NO. 2021-064

APRIL TERM, 2021

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Franklin Unit, |
| | } | Criminal Division |
| | } | |
| Alexis B. Lesage | } | DOCKET NO. 1127-9-20 Frcr |

Trial Judge: Howard E. Van Benthuysen

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant Alexis Lesage appeals from the criminal division's decision denying her motion for home detention.  She argues that the court erred by improperly relying on attachments to the Vermont Department of Corrections (DOC) home detention investigation report when the report had not been admitted into evidence, and that the court improperly relied on hearsay evidence contained in the report.  We affirm.

¶ 2.     Defendant is charged with attempted second-degree murder and simple assault. Defendant was arraigned on November 25, 2020.  The court maintained the $100,000 cash bail set on the original arrest warrant application, which had been approved on September 23, 2020. Defendant was held for lack of bail.  On December 18, 2020, defendant filed a motion for home detention under 13 V.S.A. § 7554b.  In relevant part, the statute provides:

> [T]he status of a defendant who is detained pretrial in a correctional facility for inability to pay bail after bail has been set by the court may be reviewed by the court to determine whether the defendant is appropriate for home detention.  The review shall be scheduled upon the court's receipt of a report from the Department [of Corrections] determining that the proposed residence is suitable for use of electronic monitoring. . . . [A]fter a hearing, the court may order that the defendant be released to the Home Detention Program, provided that the court finds placing the defendant on home detention will reasonably assure his or her appearance in court when required and the proposed residence is appropriate for home detention.  In making such a determination, the court shall consider:

> > (1) the nature of the offense with which the defendant is charged;

> (2) the defendant's prior convictions, history of violence, medical and mental health needs, history of supervision, and risk of flight; and
>
> (3) any risk or undue burden to other persons who reside at the proposed residence or risk to third parties or to public safety that may result from such placement.

Id. § 7554b(b).

¶ 3.     Defendant proposed home detention at her mother's home. DOC filed its report on January 21, 2021, and the court held a hearing on February 12 to consider defendant's motion. At the hearing, the defense called defendant's mother to testify. She testified about her residence and her ability to supervise defendant. The State next called the DOC investigator to testify about the home detention investigation report. The investigator testified that in preparing the report, he first contacted mother to ensure that she was willing to remove prohibited items from her home. He explained that he was familiar with the area where mother lives and knew that area had sufficient cell coverage for the GPS equipment. Next, he testified that he contacted the Department for Children and Families (DCF) and heard back immediately that DCF had concerns about defendant's potential release. He noted that he "was able to get in contact with the three individuals who were mentioned in the report." He then testified that he received more information regarding defendant's charges in Indiana. He said that, based on his investigation, "there's a lot of information that . . . I deem as concerns for the court to look at when they're considering [the report]." He explained that he attached all documentation that he received as part of the investigation to the report so that the court could review it. The investigator also testified about limitations to DOC supervision due to the COVID-19 pandemic.

¶ 4.     On February 17, 2021, the court issued an order denying defendant's motion for home detention. The court made the following findings. Defendant was charged with attempted second-degree murder for participating in the stabbing of a man in the chest. The affidavit alleged that neither defendant nor the man knew each other at the time of the incident. A few days later, defendant was arrested in a stolen car in DeKalb County, Indiana. She was charged with felony possession of methamphetamine and felony possession of a stolen vehicle. The State sought her extradition back to Vermont. Defendant waived extradition and was returned to Vermont later in the fall. Defendant had no prior criminal record.

¶ 5.     Defendant's mother lives with her teenage son, defendant's half-brother, who plans to stay with his father in Florida for the summer and return to Vermont for school in the fall. Mother is unemployed and can supervise defendant at all times but intends to return to work part-time. It was unclear how defendant's supervision would occur if and when mother returns to work. Defendant has lived in Vermont for most of her life and, most recently, lived with her mother on and off for the past couple of years. However, mother had "no idea" where defendant was at the time of the alleged crime and that she fled to Indiana.

¶ 6.     Normally, a DOC investigator conducts a proposed home detention site visit and assesses its cell phone service, as the GPS system requires good cell service to receive signals from the monitoring bracelet. Due to the pandemic, the investigator was not able to visit mother's home in person. Based on his experience, he was sure that mother's home has sufficient cell service to support GPS monitoring. Because he did not visit the home, the inspector relied on mother's

assurance that there were no firearms or alcohol in her residence. Further, DOC does not plan to conduct in-person checkups on persons monitored by GPS on home detention due to the pandemic.

¶ 7. Defendant has two children. One is in DCF custody and the other lives with defendant's former partner. Attached to the home detention investigation report were incident reports from DCF concerning threats of violence that defendant allegedly made. One incident report alleged that defendant made threats to her child's foster parents, including her former partner. The court took judicial notice of the existence of a current relief-from-abuse order against defendant, which provides protection to defendant's former partner and his minor children, including defendant's child.

¶ 8. A second incident report alleged that defendant told another person that she would kill her DCF caseworker in a manner similar to the murder of a DCF worker in Barre by a mother who lost custody of her child. The report alleged that defendant purchased a .40 caliber handgun and had not been engaging in needed mental health counseling. The report further alleged that defendant was present when her co-defendant in this case shot at defendant's former partner's brother.

¶ 9. The trial court then turned to consider defendant's motion under 13 V.S.A. § 7554b. It noted that although defendant is charged with a crime punishable by life imprisonment and may be held without bail if the evidence of guilt is great, 13 V.S.A. § 7553, here the State requested $100,000 cash bail. Accordingly, it explained that the "the legislative framework of § 7554b puts the burden on the applicant, but favors release over incarceration subject to the least restrictive conditions that will assure public safety as well as the defendant's appearance." The court then considered the statutory factors under 13 V.S.A. § 7554b(b).

¶ 10. As to the first factor, the court explained that defendant is charged with a serious, violent offense and faces anywhere from twenty years to life imprisonment if convicted. Additionally, the offense appeared to be an act of random violence. The court weighed this factor heavily against home detention.

¶ 11. As to the second factor, the court weighed several facts in favor of home detention, including the fact that defendant had no prior criminal history and that she had lifetime ties to Vermont, including her mother and her children. However, the court explained that defendant had a recent history of threatened violence, pointing to the relief-from-abuse order and the DCF incident reports regarding threats towards DCF workers and the foster parents in custody of defendant's child. The court weighed this against home detention. Additionally, the court concluded that defendant posed a significant flight risk, given that she fled Vermont after the alleged crime occurred and was arrested in Indiana. The court weighed defendant's risk of flight heavily against home detention.

¶ 12. As to the third factor, the court concluded that defendant would not pose an undue burden to her mother and that her mother can currently supervise her at all times. However, if her mother were to begin working part-time, it was unclear how or by whom defendant would be supervised. Further, the court expressed concern that because of the pandemic, the DOC investigator was not able to visit the proposed home and would not be conducting random in-person checks. This was particularly concerning to the court because defendant was accused of attempted murder with a deadly weapon. As such, it weighed the uncertainty of the safety of the home and the lack of visits against home detention.

¶ 13.    Additionally, the court pointed to the overall risk to third parties and to public safety, along with defendant's demonstrated risk of flight, as the greatest barrier to home detention. Given the random and violent nature of the alleged crime, defendant's alleged threats to DCF workers and her child's foster parents, and the active relief-from-abuse order issued to her former partner, the court determined that GPS monitoring would not adequately alleviate the risk to third parties or the public.  On balance, the court concluded home detention was not appropriate and denied defendant's motion.

¶ 14.    On appeal, we review the trial court's decision for abuse of discretion.  State v. Blow, 2015 VT 143, ¶ 13, 201 Vt. 633, 135 A.3d 672 (mem.).  "Although the court has discretion to grant or deny defendant's request for home detention, its decision must be rooted in factors specific to defendant under § 7554b(b)."  State v. Pelletier, 2014 VT 110, ¶ 9, 197 Vt. 644, 108 A.3d 221 (mem.).

¶ 15.    Defendant argues that the trial court erred by relying on the home detention investigation report attachments, as well as the information and affidavit, because they were not introduced into evidence during the hearing.  Further, she contends that the court improperly relied on hearsay statements contained within the report attachments.  Alternatively, defendant argues that if the rules of evidence do not apply to home-detention hearings, the trial court should have applied safeguards to determine that the hearsay statements in the report attachments were reliable. She contends that the failure to do so here violated her due process rights.

¶ 16.    As a preliminary matter, we note that defendant failed to raise her objections to the report and its attachments at the home-detention hearing.  See State v. Yoh, 2006 VT 49A, ¶ 36, 180 Vt. 317, 910 A.2d 853 ("Our rules require a party to raise and preserve all objections at trial, and we do not ordinarily consider issues not raised below.").  While the report and its attachments were not formally introduced into evidence, defendant was on notice that the report would be used in the court's determination.  Section 7554b provides that the court's consideration only occurs "upon the court's receipt of a report from [DOC] determining that the proposed residence is suitable for the use of electronic monitoring" and presupposes that the court will consider the report in its decision.  13 V.S.A. § 7554b(b).  And at defendant's hearing, the DOC investigator testified that during his investigation, he received additional information from DCF and the prosecuting attorney in Indiana.  He explained that he collected "a lot of information that [he deemed] as concerns for the court to look at when they're considering this" and that he "attached any documentation that [he] acquired or sought out as part of the investigation so [the court] could review it."  Defendant did not object to this testimony or indicate that she had not been able to review the report and its attachments before the hearing.  Accordingly, we review defendant's claims for plain error.  See V.R.Cr.P. 52(b); State v. Nash, 2019 VT 73, ¶ 13, __ Vt. __, 221 A.3d 386 ("On appeal, we review unpreserved issues for plain error.").

¶ 17.    The Legislature has determined that the rules of evidence do not apply in hearings under 13 V.S.A. § 7554, which concern bail and conditions of release.  See 13 V.S.A. § 7554(g) ("Information stated in, or offered in connection with, any order entered pursuant to this section need not conform to the rules pertaining to the admissibility of evidence in a court of law.").  By contrast, when the State seeks to hold a person without bail under 13 V.S.A. §§ 7553 or 7553a, it must show "(1) that substantial, admissible evidence of guilt exists, and (2) the evidence can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty."  State v. Duff, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989) (adopting standard for dismissal for lack of prima facie case under V.R.Cr.P. 12(d)) (emphasis omitted).  However, "the State is not required

under this standard to actually present such evidence during the course of the § 7553 hearing." State v. Bullock, 2017 VT 7, ¶ 8, 204 Vt. 623, 165 A.3d 143 (mem.). Instead, the State's burden "is to demonstrate that it has evidence that will be admissible at trial, not to have it lawfully admitted at the hearing as if it were a trial." Id.

¶ 18.     Section 7554b is silent as to whether the rules of evidence apply to home-detention proceedings. In certain respects, home-detention hearings under § 7554b rely upon the framework established under § 7554. The Court has explained in an unpublished entry order:

> [I]n a § 7554 case, the broader framework established by the
> Legislature calls for release subject to the least restrictive set of
> conditions that will reasonably assure the appearance of the person
> as required, and protection of the public. 13 V.S.A. § 7554(a)(1),
> (2). Although home detention is not itself a condition of release, as
> it is a condition of confinement subject to DOC supervision, see
> § 7554b, the broader framework favoring the least restrictive,
> reasonably effective conditions in § 7554 cases applies to requests
> for home detention by defendants bailable pursuant to § 7554.

State v. Dunn, No. 2014-113, 2014 WL 3714647, at *2 (Vt. May 5, 2014) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo14-113.pdf [https://perma.cc/DN6P-BWKS]. Further, the Legislature amended § 7554b to explicitly exclude defendants held without bail under §§ 7553 and 7553a from eligibility for home detention. 2018, No. 164, § 7. Only those defendants who are detained pretrial for inability to pay bail after bail has been set by a court under § 7554 are eligible to seek home detention. 13 V.S.A. § 7554b(b).

¶ 19.     The fact that courts only consider home detention for defendants who are bailable under § 7554 suggests that under § 7554(g), the court need not conform to the rules of evidence in considering a motion for home detention. Given that both §§ 7554 and 7554b aim to impose the least restrictive set of conditions that ensure both the defendant's appearance in court and protection of the public, it would be inconsistent to conclude that one proceeding must follow the rules of evidence while the other need not. Accordingly, the court did not clearly err by relying on the report that was not introduced into evidence. Nor did the court err by relying on the hearsay statements contained in attachments to the report, or the information and affidavit.[*]

¶ 20.     Nevertheless, home detention is a condition of confinement and thus implicates defendant's right to liberty. See Dunn, 2014 WL 371467, at *2; Duff, 151 Vt. at 440, 563 A.2d at 263. In this case, the DCF incident reports attached to the home detention investigation report

---

[*]Defendant also argues that the court erred by taking judicial notice of the relief-from-abuse order against her because the trial court failed to give the parties notice. Vermont Rule of Evidence 201(c) provides that a court has discretion to take judicial notice, "whether requested or not." Evidence Rule 201(e) provides that if a party was not notified before the court takes judicial notice, the party is entitled "upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." As defendant has not requested such a hearing in the trial court, we decline to address the issue. See Nash, 2019 VT 73, ¶ 15 (explaining that this Court has declined to engage in plain-error review when the trial court had no opportunity to address the issue and the record is not adequately developed).

contained several hearsay statements. As defendant notes, in other proceedings where the rules of evidence do not apply and hearsay is introduced, there are certain safeguards in effect to protect a defendant's constitutional rights. See V.R.Cr.P. 4(b) (permitting court to rely on hearsay evidence in finding probable cause if "there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished"); State v. Eldert, 2015 VT 87, ¶ 18, 199 Vt. 520, 125 A.3d 139 (concluding that court may admit hearsay evidence during probation-revocation hearing when good cause exists, which requires court to consider reason offered by State for not offering live testimony and reliability of hearsay evidence).

¶ 21. Here, the trial court established a factual basis for the first DCF incident report, noting that the allegations made in the report formed the basis for the relief-from-abuse order against defendant, of which it took judicial notice. However, the trial court did not establish a factual basis for the second DCF incident report. Moreover, the allegations leading to that report contain information that potentially calls its credibility into question. The allegations arose in a letter from defendant's ex-boyfriend, an inmate in DOC custody, to a DOC worker. In the letter, the inmate suggested that defendant filed a false report against him because he broke up with her and described defendant's actions leading up to his arrest, including her alleged threats to DCF. He told the DOC worker, "I know you are fair enough not to just let me take the fall for something like this when I have been keeping you very posted on everything" and that he would "give the [State's attorney] whatever they need to prosecute [defendant] for child abuse, threats to DCF, and filing false reports." DCF explained that DOC passed this information on to DCF, and in a follow-up interview with DCF, the inmate alleged that he had recordings of defendant making these threats. However, the inmate was unable to find the recordings and speculated that defendant deleted them from his phone. Vermont State Police interviewed the inmate and defendant and advised that they did not have enough information to pursue criminal charges regarding the threats. The court's order did not mention the source of these allegations or that the inmate may have had a motivation to lie. See Eldert, 2015 VT 87, ¶ 20 (listing "bias or motive to fabricate" as important considerations in determining reliability of hearsay evidence in probation-revocation proceeding).

¶ 22. But even assuming that the trial court improperly relied upon the hearsay statements without a finding of credibility, considering the totality of the court's findings that were predicated on properly considered evidence, we cannot conclude that defendant was prejudiced. See Yoh, 2006 VT 49A, ¶ 39 (explaining that plain error exists where there is obvious error that affects substantial rights and results in prejudice). The court concluded that the serious, violent nature of the offense weighed heavily against home detention under § 7554b(b)(1). Under § 7554b(b)(2), it noted that defendant's lack of a criminal history and established ties to Vermont weighed in favor of home detention, but it determined that defendant posed a significant risk of flight, given that she was apprehended in Indiana, which weighed heavily against home detention. Finally, under § 7554b(b)(3), the court noted that although defendant's mother was able to supervise her, her mother planned on getting a part-time job, and it was unclear how defendant would be supervised if that occurred. Additionally, due to the pandemic, DOC did not conduct a site inspection to search for prohibited items and did not plan to conduct in-person visits, which concerned the court because defendant was charged with attempted murder using a deadly weapon. Finally, the court concluded that defendant posed a risk to third parties and public safety, based on the random, violent nature of the crime alleged and the active relief-from-abuse order against defendant.

¶ 23. The trial court properly considered all three factors in § 7554b and, on balance, determined that releasing defendant to home detention was not appropriate. The factors largely weighed in favor of denying home detention; the court's reliance on the hearsay statements in the

6

second DCF incident report did not tip the balance in a meaningful way. Accordingly, there was no plain error here. See State v. Brochu, 2008 VT 21, ¶ 72, 183 Vt. 269, 949 A.2d 1035 (finding no plain error where there was no likelihood that error affected outcome).

¶ 24. Finally, defendant argues that DOC policy requires the investigating officer to notify the State if there is any public safety risk with the proposed residence, and because the State did not litigate any safety risks here, the court violated separation-of-powers principles by stepping into the shoes of the prosecutor. We disagree. Section 7554b explicitly gives the court discretion to order a defendant to home detention, and DOC policy recognizes this discretion. 13 V.S.A. § 7554b(b); Vt. Dep't of Corrs., Interim Memo: Home Detention 1 (effective July 1, 2018), https://doc.vermont.gov/sites/correct/files/documents/policy/home-detention.pdf [https://perma .cc/BHA7-TLWR]. The court does not violate separation-of-powers principles by exercising this discretion.

Affirmed.

BY THE COURT:

Paul L. Reiber, Chief Justice

☒ Publish

Beth Robinson, Associate Justice

☐ Do Not Publish

William D. Cohen, Associate Justice